## GULF, C. & S. F. RY. CO. v. JACKSON.

(Circuit Court of Appeals, Eighth Circuit. December 3, 1894.)

### No. 424.

1. MASTER AND SERVANT—DUTY AS TO SAFE PLACE.

Though it is the duty of a master, in many cases, to exercise ordinary care in providing his servants with a reasonably safe place in which to discharge their several duties, he is not required to provide a safe place, in cases where the very work upon which the servant is engaged is of a nature to make the place where it is done temporarily insecure, but in such cases the servant assumes the increased hazard.

2. SAME—RISKS OF EMPLOYMENT.

Plaintiff, a section hand in the employ of defendant railway company, was engaged at night, with others, in tearing up and relaying a portion of the railway track which had been undermined by high water in a river near which it ran. While plaintiff and others were carrying a heavy rail, a part of the river bank near by caved in, which caused them to move forward hurriedly, when one of the men stumbled and fell. The others dropped the rail, which fell across a tie, causing one end to fly up and strike and injure plaintiff. Plaintiff claimed that defendant was negligent in not providing sufficient light, and in allowing the ground to be encumbered with the obstruction over which his fellow workmen stumbled. Held, that, under the circumstances of the work to be done, defendant was not bound to supply a place free from obstructions, to do the work, and that plaintiff assumed the risks attendant upon the obstructed condition of the ground, as well as upon any deficiency of light, which must have been at least as well known to plaintiff as to defendant.

In Error to the United States Court in the Indian Territory.

This was an action by Jo Jackson against the Gulf, Colorado & Santa Fé Railway Company to recover damages for personal injuries. The plaintiff recovered a verdict in the circuit court. Defendant brings error.

J. W. Terry, P. L. Soper, and C. L. Jackson, for plaintiff in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This case comes on writ of error from the United States court in the Indian Territory. The plaintiff, Jo Jackson, who is the defendant in error here, brought a suit against

the plaintiff in error, the Gulf, Colorado & Santa Fé Railway Company, for personal injuries said to have been sustained by him in the month of September, 1891, while he was helping to tear up and relay a portion of the defendant company's railroad track near Purcell, on the bank of the South Canadian river, in the Indian Territory. The testimony shows that the railroad track at that place had been undermined by high water in the river, and that it had become necessary to take up a portion of the track, and relay it further back from the river bank, where it would be safe from the encroachment of the flood in the river. The plaintiff was employed in this work at night, with a large gang of extra sectionmen, and, at the time he was hurt, was assisting 10 or 12 other men in removing the rails from the old track which was being dismantled. As the party of men last mentioned were in the act of lifting and carrying a steel rail which weighed about 700 pounds, a portion of the river bank in their immediate vicinity caved in. This caused them to move forward very hurriedly with their burden, and as they did so, one of the party accidentally stumbled and fell. The other men thereupon dropped the rail. It fell across a tie, and one end thereof flew up, hitting the plaintiff in the abdomen, thereby inflicting the injuries of which he now complains. In the complaint on which the case was tried, the plaintiff below charged, in substance, that his injuries were occasioned by the culpable neglect of the defendant company, in failing to provide a sufficient number of lights to do the work with ordinary safety, and in permitting ties and other obstructions to remain in the way of the men who were engaged in dismantling the old track, and in failing to inform them of the existence of such obstructions. At the conclusion of the testimony, the court instructed the jury as follows:

"It is the duty of a railway company to furnish its employés with safe and suitable appliances to do the work they are employed to do, and if you believe from the evidence in this case that the defendant company failed to furnish sufficient light for the doing of that work in which the plaintiff was engaged with safety and security, or that the defendant failed to furnish safe premises where the work was to be done, and that the plaintiff was injured by reason of such failure on the part of the defendant either to furnish lights or safe premises, and would not have been injured but for such failure, and the plaintiff himself was free from negligence, you will find for the plaintiff, unless you find for the defendant under the instructions hereinafter given you."

In obedience to this instruction, the jury returned a verdict in favor of the plaintiff, on which a final judgment was subsequently entered. To reverse that judgment the defendant company has sued out the present writ of error.

We have only to inquire and to determine whether, in view of the facts disclosed by the present record, the foregoing instruction was applicable to the case, and was properly given. It is doubtless the duty of a master, in very many cases, to exercise ordinary care in providing his servants with a reasonably safe place in which to discharge their several duties. When men are set to work in a building, or on a scaffolding or other structure, which has been provided by the employer for their use, it is the employer's duty to exercise reasonable diligence in seeing that such building or other

structure is made reasonably safe, and that the ordinary risks of the employment are not enhanced by latent defects in the place where the servant is required to exercise his calling, whether it be a building or any other structure. In the respect last mentioned, the duty of the master to provide for the safety of his servants is commensurate with his duty to provide safe tools, machinery, materials, and other appliances for the use of the servant. It sometimes happens that much skill, experience, and care is required in erecting structures of even a temporary character for the use of laborers and artisans; and in such cases it is more especially the duty of the master to take such precautions as are reasonably necessary to guard against possible defects in such structures, which may endanger the lives of his workmen, or subject them to unusual and unnecessary risks. Manning v. Hogan, 78 N. Y. 615; Green v. Banta, 48 N. Y. Super. Ct. 156; Whalen v. Centenary Church, 62 Mo. 336; Anderson v. Bennett, 16 Or. 515, 528, 19 Pac. 765; Kelly v. Telephone Co., 34 Minn. 321, 25 N. W. 706; Railway Co. v. Needham (decided by this court at the last term) 11 C. C. A. 56, 63 Fed. 107. While the foregoing doctrine is well founded in reason and authority, yet it is not a doctrine of universal application, nor one which can be invoked in all cases where an employé is injured by reason of some insecurity or defect in the place where he is required to work. It frequently happens that men are employed to tear down buildings or other structures, or to repair them, after they have become insecure, or it may be that the work undertaken by the employé is of a kind that is calculated to render the premises or place of performance, for the time being, to some extent insecure. In cases such as these the servant undoubtedly assumes the increased hazard growing out of the defective or insecure condition of the place where he is required to exercise his calling, and the doctrine above stated cannot be properly applied. Carlson v. Railway Co., 21 Or. 450, 28 Pac. 497; Armour v. Hahn, 111 U. S. 313, 318, 4 Sup. Ct. 433.

Considering all of the circumstances under which the injuries complained of in the case at bar are said to have been sustained, we think that the case did not warrant an application of the doctrine of "safe place," as that doctrine is ordinarily applied, and that the trial court erred in the instruction above quoted, in charging the jury, in substance, that the plaintiff might recover if the defendant failed to furnish safe premises where the work was to be done, and if the plaintiff was injured by reason of such failure to furnish safe premises. In our judgment, this portion of the charge made the defendant company responsible for an injury occasioned by an ordinary risk of the particular employment, which was clearly assumed by the employé. As we have heretofore stated, the plaintiff had been sent out in the nighttime, with a large gang of extra section men, to help tear up, remove, and relay a portion of a railroad track that was in imminent danger of being washed into the river by high water. The work on that occasion not only had to be done with great haste, but it was a kind of work which, if done with less haste and in the daytime, would naturally cause the right of way to become incumbered for the time being by ties, rails, loose earth, and such other obstructions as are ordi-

narily incident to the work of dismantling an old track and laying a new one. This condition of affairs must have been foreseen by the plaintiff when he undertook to assist in reconstructing the track, as he had been in the employ of the defendant company, as a sectionman, for some two years, and was doubtless familiar with the manner in which such work was usually done, and the risks incident thereto. He had every reason to expect that he would be called upon to carry or assist in carrying rails and ties where the track was torn up, and the ground was somewhat broken and obstructed by débris, and that it might happen on such occasions that some one would stumble and perhaps fall. He certainly had no reason to suppose that the right of way where he would have occasion to work would be kept free at every moment from all such impediments as might cause a man to lose his footing, nor can it be said, in view of the character of the work in which the plaintiff was engaged, that it was the duty of the defendant company to thus keep its right of way at all times free from such obstructions. It is obvious, we think, that, in so far as the injury complained of was occasioned by defects in the place where the plaintiff was required to work, it must be attributed to one of the ordinary risks of the service in which he was engaged, and which he impliedly assumed when he became engaged in such service.

We are also of the opinion that, on the state of facts disclosed by this record, the plaintiff was not entitled to charge the defendant company with responsibility for the injury complained of on the ground that it had failed to furnish sufficient light for the doing of the work in which the plaintiff was engaged. If the light furnished was in fact insufficient to do the work in question with ordinary safety, that was a fact which was as well known to the plaintiff as it was to the defendant's agent, whose duty it was to supply lamps on such occasions. It is also evident that the plaintiff and the other laborers, who were assisting him to carry away rails as the track was torn up, were better acquainted with the need of more lamps, and with the risks incident to insufficient light, at the particular place where they were working, than any other person or persons in the employ of the defendant company. In short, the defect complained of in the appliances furnished for doing the particular work was a patent and obvious defect, and the risks encountered in consequence of the alleged want of proper appliances for doing the work were better known to the plaintiff and to his immediate associates than to any one else. Moreover, as the work in hand was necessarily undertaken in the nighttime and, as it seems to have been a very dark and cloudy night, the plaintiff and the other members of the gang had every reason to believe when they engaged in the work that they would be hindered to some extent by the darkness, and that a little more care would have to be exercised in carrying rails or other heavy burdens than if the work had been undertaken by daylight. For these reasons, and because the plaintiff continued at work with full knowledge of the situation, we think that he should be held to have voluntarily assumed whatever increased hazard was due to insufficient light. If the defendant company was guilty of culpable negli-

gence at the time and place in question, in requiring the plaintiff to help carry rails with the quantity of artificial light that had been supplied, then it is difficult to escape the conclusion that the plaintiff himself was at fault in continuing to work with insufficient light, when he was well acquainted with the increased risk which he thereby incurred. Railway Co. v. Drake (Kan.) 35 Pac. 825; Railroad Co. v. Schroeder, 47 Kan. 315, 27 Pac. 965; Railroad Co. v. Moseley, 6 C. C. A. 225, 56 Fed. 1009, 1012; Wood, R. R. § 379, and cases there cited. The result is that, for error committed in giving the foregoing instruction, the judgment of the lower court is reversed and the cause is remanded, with directions to award a new trial