KANSAS CITY S. RY. CO. et al. v. BILLINGSLEA.

(Circuit Court of Appeals, Fifth Circuit. May 31, 1902.)

No. 1,126.

1. APPEAL—QUESTIONS REVIEWABLE—EXCESSIVE VERDICT.

The circuit court of appeals cannot review a judgment on the ground that the jury was not impartial unless the record affirmatively shows that it was improperly influenced, or was governed by passion or prejudice; and that the verdict may have been for too large an amount does not show either of such facts.

2. SAME—SUFFICIENCY OF EVIDENCE.

Where defendant did not ask the direction of a verdict, the circuit court of appeals cannot review a judgment for plaintiff on the ground that the verdict is not supported by the evidence.

3. SAME.

Contributory negligence is a matter of defense, and, where the question has been submitted to the jury under proper instructions, their finding thereon cannot be reviewed on a writ of error.

4. MASTER AND SERVANT—INJURY OF SWITCHMAN—CONTRIBUTORY NEGLIGENCE.

Contributory negligence on the part of a railroad switchman cannot be predicated on the mere fact·that he mounted a moving train which was being switched in the yards of the company where he was at work.

5. SAME—ASSUMED RISKS—SERVANT EMPLOYED IN MAKING PLACE SAFE.

A railroad switchman who, with knowledge that the yards in which he was working had become defective and dangerous by reason of loose stones and rock which had been left therein, in the vicinity of the tracks, on being told by the foreman that he was going to clear away the obstructions, consented to remain in the service, and assisted in the work by switching cars to the places needed, while so engaged assumed the risk from such obstructions; and he had no right to rely absolutely on a statement of the foreman that a certain part of the yards had been cleared, where he had equal opportunity to see and know the fact.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

This is an action at law by the defendant in error, Robert H. Billingslea, herein called plaintiff, to recover damages for personal injuries against the Kansas City Southern Railway Company and Samuel W. Fordyce and Webster Withers, as receivers of the properties of the Kansas City, Pittsburg & Gulf Railway Company, the Texarkana & Ft. Smith Railway Company, and the Kansas City, Shreveport & Gulf Railway Company, herein styled defendants.

The cause of action accrued against said Fordyce and Withers, receivers as aforesaid; and the Kansas City Southern Railway Company was the purchaser at foreclosure sale of the receivership properties, and thus, it is not denied, became liable under the orders of sale and confirmation for the cause of action counted on if established against said receivers. Webster Withers died pending the suit, and the action proceeded against Samuel W. Fordyce as surviving receiver. The suit resulted in a verdict for $20,000 damages, and in a judgment on remittitur for the sum of $15,000 in favor of the plaintiff; payment to be enforced by execution against the Kansas City Southern Railway Company.

The plaintiff, at the time of the alleged injuries, was in the employment of the said Fordyce and Withers, receivers, serving them as a switchman in the yard of the Texarkana & Ft. Smith Railway Company at Port Arthur,

¶ 5. Assumption of risk incident to employment, see note to Railroad Co. v. Hennessey, 38 C. C. A. 314.

Tex. It is shown by the evidence that, on account of certain work which was being done in and about the yard and at the wharf, the yard had become littered-up and obstructed on account of the rocks or stones unloaded from, falling from, and knocked off the trains, constituting plain and visible and more or less dangerous obstructions on or near the tracks. At the time of the plaintiff's injury, the agents of the receivers were, and had been for some days, engaged in clearing the yard, and receiving and hauling away the rocks, and it was a part of plaintiff's duty to switch and locate the cars and place them along the tracks at proper places for that purpose. The placing of the cars at the proper places was a part of the work intended to clean up and put the yards in safe condition. It further appears that the plaintiff knew of the condition of the yard, and about four or five days before the casualty talked of the same, and in regard to remaining on that account in the employment of the receivers, to the yard foreman, a Mr. Murphy, who had charge of the yard, and who was the receivers' authorized agent; and, as this conversation seems important, we quote from plaintiff's evidence as follows:

"Q. Had you ever had any conversation with Mr. Murphy in regard to the condition of that track, and anything they were supposed to do with it? A. Mr. Murphy had only been there a week or ten days ·before the accident. Five or six days before the accident I was sitting on the company walk, a walk extending 150 yards in front of the depot. The engine was working, and had left me there, and the conversation came up between Mr. Murphy and I as to the condition of the yard. I made the remark, 'It will not bother me, as I will not be here long.' He said, 'I came here under instructions to put the yards in good condition, and I will do it.' The next morning after that conversation we put eight cars at his disposal on track No. 5. Q. You told him you were not going to stay there? A. Yes, sir; I told him that I would not work in yards in the condition they were. Q. You gave him that as a reason why you thought of moving? A. Yes, sir. * * * Q. What is usual and customary in regard to keeping switch yards in condition? A. In all yards I have been employed in, I have found on the part of the management that it was necessary for the men in charge to keep the yard in perfect working condition, and keep cleaned all obstructions that are dangerous to the employés employed in the yards, such as pieces of rock, stone, and things left lying over the yard. Q. What is the necessity of that? A. To prevent accidents occurring while switchmen are working. Q. What did you say that Murphy said he would do in regard to clearing away those rocks, and when he was going to clear the yards? A. He said he was going to do it. Q. He said he was going to do it? A. Yes, sir. Q. Did that have an effect on your intention to remain or otherwise? A. Yes, sir; 'I was satisfied with the position I had. The position was not hard, and I got a very nice salary, and I did not propose to give it up if I thought I was safe. I relied on the promise, and thought he was executing the promise by removing the rocks."

The following is a map of the yard used by both parties:

The jury returned a verdict in favor of the plaintiff for $20,000, and thereupon judgment was entered. A motion for a new trial was entered and argued by counsel, whereupon the court declared that, if the plaintiff remitted $5,000 of the verdict and judgment, said motion would be denied; otherwise, sustained; the court, at the same time, declaring that it was of opinion the verdict was too large merely from overestimation, and not from any improper motive on the part of the jury. Thereupon a remittitur was entered in the sum of $5,000, accepted by the court, and judgment entered for $15,000. Other material facts are stated in the opinion of the court.

Hal. W. Greer, R. A. Greer, and Thos. R. Morrow, for plaintiffs in error.

P. K. Ewing and H. F. Ring, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

After stating the facts as above, PARDEE, Circuit Judge, delivered the opinion of the court.

The first assignment of error charges that "the verdict of the jury for the full amount sued for, to wit, $20,000, for the loss of plaintiff's left foot about half way between the knee and the foot, manifests that the jury was prejudiced, and was influenced by passion or ignorance, and did not render an impartial verdict under the facts nor charge of the court." We find nothing in the record to indicate that the jury was influenced by either passion or ignorance, but, on the contrary, find that, in the opinion of the trial judge, the amount of the verdict was not due to any improper motive on the part of the jury, but, in so far as it was excessive, resulted from overestimation. The contention raised by this assignment of error is entirely beyond our jurisdiction to review unless the record affirmatively shows that the jury was either improperly influenced, or was governed by passion and prejudice, to the material injury of the parties.

The second assignment of error is to the effect that the verdict and judgment of $15,000 was excessive, and needs no consideration.

The fourth assignment of error is to the effect that the verdict of the jury is against the clear weight and preponderance of the testimony. The defendant did not move for a general charge to the jury, but allowed the case to be submitted on the evidence, and the matter is therefore beyond our review.

The fifth assignment of error is to the effect that the verdict is contrary to, and not supported by, the law as given in the charge of the court, nor by the evidence admitted under the ruling of the court, in that if the cars were in motion, whether rapidly or slowly, in response to plaintiff's signal, the same did not require the plaintiff to mount said moving cars; and the direct and proximate cause of his injury was his own act in attempting to mount said moving cars.

The sixth assignment of error is that the verdict and judgment are not supported by the admitted facts in that plaintiff mounted a moving train of cars, in a yard which he had testified he knew to be dangerous by reason of the rocks and obstructions, and his own testimony showed he was injured by one of these obstructions. We understand these two assignments of error are based on the proposition that the plaintiff was guilty of contributory negligence, and we think they

116 F.—22

are not well taken, because contributory negligence is a matter of defense, and in this case that question was submitted to the jury on the evidence, with instructions regarding the same fully as favorable to the defendants as the law will allow.

The seventh assignment of error complains of the overruling of defendants' motion for a new trial, and needs no consideration.

The eighth assignment of error is the overruling of the defendants' general demurrer to the plaintiff's petition, in that the same fails to state a cause of action in this: that it alleges plaintiff, in his capacity of switchman, attempted to mount a moving train of flat cars, and was injured by so doing; thereby and therein alleging contributory negligence per se on his part. As stated above, contributory negligence is an affirmative defense, and we do not think it can be predicated upon the mere fact that a switchman mounted a moving train which was being switched in the yards of the company.

This disposes of all the assignments of error except the third, to the effect that the court erred in laying great stress upon and in repeating the charge that if defendants' agent Murphy assured plaintiff that the yard where the injury occurred was repaired, and the obstructions removed, and if plaintiff relied on such statement and was injured, he could recover. The exception on which this assignment is based was as follows:

"Mr. Greer. I wish to except to that portion of the court's charge to the effect that if Murphy assured and stated to the plaintiff that that portion of the yard had had the obstructions removed therefrom, and he acted thereon, as laying too great a stress upon the proposition, and we think that if this plaintiff, in the discharge of his duties, had equal opportunities with Murphy to know whether such obstructions had been removed or not, that it was his duty to exercise that knowledge and information for himself."

The case shows that the railroad yard wherein the plaintiff was injured, and the several tracks therein, through the course of business had become obstructed and dangerous ·from loose rocks and stones, which had fallen off the trains, and refuse or rejected rocks dumped therein; that this condition was known to the receivers, who had taken the initiative to have the yard and tracks cleared, and to the railroad employés and trainmen, who were called on to work in said yard; that such condition was well known to the plaintiff, who was employed in the yards as a switchman, and in handling the trains and cars actually in use in the work of clearing up; and that the plaintiff considered the question of remaining in the employment on account of the obstructions, and on the statement of Murphy, the yardmaster, "I came here under instructions to put the yards in good condition, and I will do it," remained in the .employment, and thereafter, until four or five days later, when he was injured, assisted in the work of clearing up. As to the risks assumed by the plaintiff under this state of the facts, the trial judge charged the jury as follows:

"If an employé knows, or in the discharge of his duty must reasonably know, that obstructions or defects exist in regard to the matters with which he is coming in contact, or must necessarily come in contact, and voluntarily continues in the employ of the company, and is thereafter injured in consequence of such defects or obstructions, he cannot recover, upon the ground of assumed risks. * * *

"Now, in this case you are to take all the testimony. If Mr. Billingslea was injured without any fault on his part which contributed to the injury, and his injury was due solely to a defect in the roadbed from a stone or rock or dangerous obstruction being thereon, and such obstruction had been there such length of time that the parties in charge of that yard for the receivers would have known it, and had time to have removed it, and the plaintiff did not know it was there, and was injured in consequence of it, without fault on his part contributing to his injury, the plaintiff would be entitled to recover. Or if the plaintiff was given a promise by Mr. Murphy, and he was authorized to represent the receivers, that he would remove these obstructions, in that state of case the plaintiff would have the right to remain in the employ of the company a reasonable length of time for such obstructions to be removed; and if, under the circumstances of the particular case, such time had not elapsed, by remaining in the employ and relying upon the promise of Mr. Murphy, if such promise was made, it would not be the assumption of risk on his part, and if he was not guilty of contributory negligence in any other particular it would not debar a recovery. Or if you believe from the evidence that Mr. Murphy, immediately before the accident occurred, informed Mr. Billingslea that the portion of the track where he was then going to work had been cleared of the obstructions, and Mr. Billingslea relied upon that statement, and did not know it to be untrue in fact, and undertook to perform the work, and without fault on his part was injured, in that state of case the plaintiff would be entitled to recover.

"One witness testified that it was the duty of Mr. Billingslea to remain at the switch, and not attempt to get on the car. The plaintiff states that it was his duty to get on the car, in order to go to the other part of the yard, in order to give the signal to the engineer where to stop the cars. That, gentlemen, is a disputed question of fact between the plaintiff and the defendant; the defendant's contention being that it was Mr. Billingslea's duty to remain at the switch, and the plaintiff's contention being that it was his duty to get on the car, and signal the engineer where to stop the cars. That is a question for you to determine, gentlemen, from all the evidence. If you find from the testimony in this case that it was Mr. Billingslea's duty to remain at the switch, and not to get upon the car, in that state of case, you are instructed that if he attempted to get upon the car, and it was his duty to remain at the switch, he would be guilty of contributory negligence, and you will find against him. But if you find from the evidence that it was not his duty to remain at the switch, but was his duty to get upon the car, and signal the engineer where to stop, then you are instructed that he could recover if he was injured in consequence of a defect in the track or roadbed of which he did not know, provided such obstruction was of such character as those in charge of the yard must have known, or in the exercise of ordinary care would have known, to be dangerous. Now, upon that phase of the case, it has nothing to do with the question of promise to repair. If Billingslea did not know it was defective, and the parties in charge of the yard knew it was dangerous, or by the use of exercise of ordinary care would have known that it was dangerous, in that state of case it would have been the duty of the defendant to remove such obstruction, if any, and if they failed so to do, and plaintiff was injured in consequence thereof, he would be entitled to recover,—that is, independent of the promise to remove the obstructions. Upon that phase, if Mr. Murphy had assured him that the yard was clear of obstructions, and Mr. Billingslea did not know to the contrary, and in the discharge of his duty, and without any act of contributory negligence on his part, he was injured in consequence of such defective condition, relying on such promise, he would be entitled to recover if he knew there had been obstructions there previously. If he did [not] know there had been obstructions there previously, and he had informed Mr. Murphy in regard to them, and Mr. Murphy had promised to remove them, then determine from the evidence whether he had remained in the service an unreasonable time for that to have been done. If, under the evidence, such time had not elapsed, and he was relying upon the company's promise to remove the obstructions, it would not be an assumption of risk that otherwise would attach to his acts. * * *

"If it was an act that an ordinarily prudent person in that line of business would have done, and you find that his injury was not the result of negligence on his part, but was due to the condition of the track, and he was injured in consequence of that condition, and you further find that the plaintiff at the time he was injured did not know of such dangerous condition, or must not necessarily have known it from the performance of his duty, and was injured in consequence of such defective condition, you will find for plaintiff. Or if you find from the evidence that plaintiff had known of such defective condition of the track previously, but if you find from the evidence that Mr. Murphy, immediately before the accident, assured him that this portion of the track had been cleared of the obstructions, and you find that the plaintiff relied upon such assurance, and did not know it to be untrue, and was injured in consequence of an obstruction that he was assured had been removed, and the accident was not due to any misconduct on his part, you will find for plaintiff. Or if you find from the evidence that the plaintiff had previously known of the obstructions near the track, but you further find that Mr. Murphy had promised to remove them, then you will determine from all the circumstances whether or not he had remained in the employ of the company an unreasonable length of time before the accident occurred. Now, on that point, understand me. As I understand the law, wherever there is a defective condition existing, and the employé knows it, and he voluntarily assumes to use it, and is injured, he cannot recover. But if he informs the employer of such defective condition, and the employer promises to remedy that defect and cure it, the party then has the right to remain in the employ a reasonable length of time for the employer to do that act. If he should remain in the employ an unreasonable length of time, and the defect still continues, and he is injured in consequence thereof, he could not recover, because it would be his own negligence in continuing to remain in the employ. The rule is that the employer shall have a reasonable length of time to remedy the defect, and the employé must only remain in the employ a reasonable length of time for the defect to be cured or remedied. Therefore, gentlemen, upon that phase of the case you are instructed that, if you believe from the evidence that Mr. Murphy did promise to remove the obstruction, then you are to determine whether or not Mr. Billingslea had remained in the employ an unreasonable length of time. If he had, and was injured in consequence of such defect, he could not recover. But if you find that it was still a reasonable time that he had the right to remain, under the circumstances, and was not guilty of negligence in remaining such length of time after the promise, in that state of case it would not debar him of the right to recover."

These instructions distinctly advised the jury that although the yard was dangerous for handling and switching trains therein, to and with the knowledge of the plaintiff, yet the plaintiff, by remaining in the employment and in assisting in handling the trains and aiding in the clearing up, assumed none of the risks of the dangerous yard and tracks from the time Murphy, the yardmaster, told him he was going to clear it up, and until a reasonable time thereafter to do the work had elapsed, which reasonable time the jury should determine from the evidence. As a general rule, it is the master's duty to furnish a reasonably safe place for his servants to work, but this rule has no application where the very work the servant is employed to do and assist in doing consists in making a dangerous place safe, and particularly where the dangerous character of the place is fully apparent, and known to the servant. Armour v. Hahn, 111 U. S. 313, 4 Sup. Ct. 433, 28 L. Ed. 440; Railway Co. v. Jackson, 12 C. C. A. 507, 65 Fed. 48; City of Minneapolis v. Lundin, 7 C. C. A. 344, 58 Fed. 525; Finalyson v. Milling Co., 14 C. C. A. 492, 67 Fed.

507; Porter v. Coal Co. (Wis.) 54 N. W. 1019; Bradley v. Railway Co., 138 Mo. 302, 39 S. W. 763; Hathaway v. Railroad Co. (C. C.) 29 Fed. 489; Ragon v. Railway Co. (Mich.) 56 N. W. 612; Rosenbaum v. Railroad Co. (Minn.) 36 N. W. 447; Bennett v. Railroad Co. (Sup.) 47 N. Y. Supp. 258; Brick v. Railroad Co., 98 N. Y. 211; Green v. Cross (Tex. Sup.) 15 S. W. 220. Where the servant, fully apprised of the dangerous character of a place, yard, building, or construction, is employed to assist in clearing up and making the same safe, and works therein for that purpose, he undoubtedly assumes the risks attendant, and in this respect the charge of the court was clearly erroneous.

Now, connected with this erroneous instruction several times repeated, and largely dependent for materiality and relevance upon it, was that part of the instructions as to the effect of the assurance, if any there was, given by Murphy, yard foreman, to the plaintiff, that the yard, or some portion thereof, was clear of obstruction. The evidence that Mr. Murphy, the yard foreman, just prior to the injury of the plaintiff gave assurance as to the safe condition of the tracks, is found in the plaintiff's testimony as follows:

"I told him I had instructions from Mr. Keevey to ask him as to the disposition of the cars. He turned, and told me to place the cars so that the south end would be two car lengths north of the tool box situated about the middle of the yard, is the best of my recollection, and the cars would be all right. He did not want to put any more cars where he was working, because they had finished that portion of the track."

At that time, Mr. Murphy was between track No. 3 and track No. 4 at the switch point on track No. 3. Further answering:

"Q. When you went to Mr. Murphy, what did he say, if anything, about the yards? A. The reply to me was as to the disposition of the cars, and, furthermore, in my remarks I said, 'You want more cars cut off and brought up,' and he said, 'No, I have finished.' The last car he had placed at his disposition was at the place where I was injured. Q. When he said he had finished, what did he mean? A. He meant that everything was in good condition and the track safe. Q. What had been the condition of the tracks at this point and below there? A. Previous to bringing this rock, and a week before, the track had been in a very bad condition. There were refuse rocks piled along the side of the track No. 5."

The judge instructed the jury, always, in connection with the assumed risk, as follows:

"Or, if you believe from the evidence that Mr. Murphy, immediately before the accident occurred, informed Mr. Billingslea that the portion of the track where he was then going to work had been cleared of the obstructions, and Mr. Billingslea relied upon that statement, and did not know it to be untrue in fact, and undertook to perform the work, and without fault on his part was injured, in that state of case the plaintiff would be entitled to recover. * * * If Mr. Murphy had assured him that the yard was clear of obstructions, and Mr. Billingslea did not know to the contrary, and in the discharge of his duty, and without any act of contributory negligence on his part, he was injured in consequence of such defective condition, relying on such promise, he would be entitled to recover if he knew there had been obstructions there previously. * * * Or if you find from the evidence that plaintiff had known of such defective condition of the track previously, but if you find from the evidence that Mr. Murphy, immediately before the accident, assured him that this portion of the track had been cleared of the obstructions, and you find that the plaintiff relied upon such

assurance, and did not know it to be untrue, and was injured in consequence of an obstruction that he was assured had been removed, and the accident was not due to any misconduct on his part, you will find for plaintiff."

If the evidence of the plaintiff as to Murphy's assurance that some track, or portion of track, was clear of obstructions, or was finished,—which meant that everything in some locality in the yard was in good condition and the yard safe,—and which evidence is uncertain as to whether the track referred to was where Murphy was (between tracks 3 and 4), where the plaintiff was injured (which was on track 5 near the north end of the same), or, where Murphy told plaintiff to place his train (which was about the middle of the yard),—warranted instructions as to how far the plaintiff had a right to rely upon the assurance of Murphy as to the condition of the tracks, still we think that the instructions as given, stressed as they were, and repeated in connection with the unsound proposition that plaintiff, by continuing to work in assisting in clearing up the yard after he received Murphy's promise that the yard should be cleaned up, assumed none of the risks of the dangerous employment, were incorrect and misleading, because the plaintiff had no right to rely absolutely on the assurance of Murphy as to a plain, patent condition, when, in the discharge of his duty of assisting in cleaning up the dangerous yard, he had equal opportunities with Murphy, in broad daylight, to see and know whether obstructions had been removed or not. The plaintiff was an intelligent man according to his evidence, an expert, as to the condition of railroad yards and tracks, and he was bound to keep his eyes open, and give full use to his senses in regard to patent obstructions. Many of the cases cited supra sustain this proposition, but see Pennsylvania Co. v. Ebaugh (Ind. Sup.) 53 N. E. 763; Barnard v. Schrafft (Mass.) 46 N. E. 621; Railroad Co. v. Herbert, 116 U. S. 655, 6 Sup. Ct. 590, 29 L. Ed. 755; Magee v. Railroad Co. (Iowa) 48 N. W. 92. The incorrect instructions as to the risk assumed by the plaintiff pending the work of making the dangerous yard safe, and as to the reliance the plaintiff had a right to give to the assurance of Murphy were decidedly prejudicial to the defendants, and, in our opinion, require a reversal of the case.

The judgment of the circuit court is reversed, and the cause is remanded, with instructions to grant a new trial.