BUNKER HILL & S. MINING & CONCENTRATING CO. v. KETTLESON.

(Circuit Court of Appeals, Ninth Circuit. March 4, 1903.)

No. 855.

1. Injuries to Miner—Assumption of Risk.

Where a miner was directed down an inclined chute for the purpose of putting in lagging, and requested that a rope be furnished to prevent falling, and at the direction of the superintendent the miner himself placed a rope in the chute, which was subsequently removed by a fellow servant, and the miner continued to work with knowledge of such removal, and was injured by falling, he assumed the risk, and was not entitled to recovery therefor.

In Error to the Circuit Court of the United States for the District of Oregon.

This action was brought by Gunder Kettleson, a citizen and resident of the state of Washington, against the Bunker Hill & Sullivan Mining & Concentrating Company, a corporation organized and existing under the laws of the state of Oregon. The defendant's mine is located in the state of Idaho. The plaintiff was engaged in this mine, and while so employed was injured. The present action is to recover damages for the injuries resulting from the alleged negligence of the defendant in not providing a safe place for the plaintiff to do the work in which he was employed. The workings of the mine were being extended to an ore chamber that had been formerly opened, but not used for 18 months or more. The chute and manway leading up from one of the levels of the mine to this chamber were to be cleaned out, and the plaintiff had been directed by the shift boss to put in some lagging in the bottom of the chamber. It was alleged in the complaint "that the chute where this plaintiff was ordered and directed by the defendant to work sloped to the bottom thereof, a distance of 90 and more feet, at an angle of about 90 deg., and was dangerous and unsafe for this plaintiff and other workmen to work at said point and place; that this plaintiff then and there refused to work at said place, and notified the foreman of said mine in charge of this plaintiff (one Bishop) that the said place was unsafe and dangerous, and that plaintiff could not work at said point and place as aforesaid unless the defendant would provide suitable ropes, ladders, and support at said point and place, whereupon the said Bishop did then and there provide a certain rope, and caused the same to be attached to the timbers along the said chute, and did then and there promise and agree with this plaintiff. on behalf of said defendant mining company, that the said rope should be then and there maintained, and that a ladder should be placed in said chute, so as to render the place where the plaintiff worked safe and secure, and to provide proper and adequate means for this plaintiff to save himself in case that the rock, ore, débris, or earth in any manner gave way, and this plaintiff as aforesaid, at all the times herein mentioned, went to the said place, being assured that the same was safe, and that the said defendant would cause said rope to be and remain in place, and would forthwith place a ladder in said chute at the point where this plaintiff was working, and did then and there rely

121 F.—34

and believe and was assured by the said defendant that each and all of said precautions as aforesaid would be taken to render said place safe; and this plaintiff continued to work at said point and place solely on account of said assurances and promises on the part of the said defendant company, which plaintiff fully believed and relied upon." The plaintiff further alleged that while he was working at said point and place "the rock, ore, and débris there, negligently and carelessly suffered to be and remain by the said defendant company, gave way under the feet of this plaintiff; that this plaintiff thereupon attempted to catch the said rope and the said ladder, and plaintiff would have been able to have so caught the same, had the same been at the point agreed upon between the plaintiff and defendant, and at which place the plaintiff then and there believed and relied upon its promise that the same would be, but that the said defendant mining company negligently and carelessly removed, or caused to be removed, or permitted to be removed, the said rope theretofore placed, and carelessly and negligently omitted to place said ladder at said place, or to take any precaution to preserve the safety of this plaintiff; that there was no other means or method whereby plaintiff could save himself, and at the time said ore, débris, and rock, carelessly and negligently permitted to be there and remain by the said defendant company, gave way under the feet of this plaintiff, without any fault or want of care and caution on his part; that plaintiff fell and rolled over and along said chute a distance of ninety and more feet." The answer of the defendant specifically denied these allegations in plaintiff's complaint, and alleged "that with full, complete, and perfect knowledge of the chutes, manways, and stopes in defendant's mine, and of the construction and condition thereof, and of the business of placing lagging in stopes, and of the danger attending such work in defendant's said mine, voluntarily undertook to place some lagging in a stope in said mine at a point reached by a chute about sixty feet in length, the first or lower thirty feet of which is constructed at an angle of about fifty-five degrees, and the remaining thirty feet at an angle of about forty-two degrees; that said lagging was to be placed in a stope at the top of said chute; that said plaintiff, with knowledge of the said mine and of the business he undertook, and the dangers attending the same, voluntarily undertook said work, and assumed all the risks and dangers ordinarily incident thereto, among which the danger of falling down said chute was included; that before commencing work in said chute, said plaintiff, at the suggestion and upon the recommendation of the defendant's foreman, under whose immediate direction said plaintiff was at work, placed a rope furnished by defendant along the side of said chute as a safeguard in case of accident, which said rope was afterwards used by plaintiff; that a short time prior to the happening of the accident to the plaintiff hereinafter mentioned, without the orders, knowledge, or consent of the defendant, but with the consent and concurrence of plaintiff, carelessly and negligently given, said rope was removed and delivered to plaintiff's fellow servants, and was not returned for the reason that plaintiff informed his said fellow servants that he had no need of the same; that while at work alone, placing said lagging, for some cause to the defendant wholly unknown, plaintiff fell, and, by reason of his neglect in permitting said rope to be removed and to remain away, slid from the top of the chute, a distance of about sixty feet, to the bottom thereof, and by said fall and sliding received whatever injury was sustained by him." Plaintiff's reply denied the new matter set forth in the defendant's answer.

The plaintiff testified in his own behalf that he was 44 years of age, and had been a miner for 27 years. He had been a foreman, and had worked at all kinds of work about a mine. He had been working in defendant's mine about five or six days. It appears from the evidence that, with respect to the place where plaintiff was at work, the first 30 feet of the chute from the level below passed up through solid rock, requiring no timbering, and a ladder was used in the manway adjoining the chute. Above this to the ore chamber in which plaintiff had been set to work, some 31 feet or more, a log crib had been constructed, with two compartments—one for an ore chute as an extension of the chute below, and the other as a manway, corresponding to the manway below; but the upper manway had been closed, and access to the

ore chamber through the upper section was by way of the log-cribbed chute. The log cribbing had interstices between the logs, in which the foot could rest when the miner or other workman was ascending or descending the chute. The testimony is conflicting as to the angle of the chute. The plaintiff claims that the angle of the chute was about 90 deg., or nearly perpendicular. The defendant claims to have ascertained by actual measurements that the lower section of the chute was 30 feet in length, and had an angle of 44 deg., and the upper section was 31 feet in length, and had an angle of 41 deg. The plaintiff's testimony concerning the accident is as follows: "I was working there about five days in the other place, and Mr. Bishop, he came one morning to me and says, 'Mr. Kettleson, we want you over there on a new job—over in the chute.' For 35 feet from the bottom of the chute, it had to be picked down and shoveled, and take it down to the mill. He says, 'I will go up and show you another place there,' 35 or 40 feet further up. 'You go up there, and there has rotten timbers been lying there, and that is like this, about forty-five degrees' [indicating]. You had to go up on this rotten timber, and then into a hole that had been caving down—old rock—and you had to crawl in this hole, and I had to put in new lagging to protect the ground. I went up there, and Mr. Bishop went up, and he showed me this thing, and he asked me if I could do that kind of work. I said, 'I can do it if I take time.' Me and Mr. Bishop walked down again—down there about 35 feet. We were in the manway, then, you know, and Mr. Bishop slipped down and fell 15 or 20 feet. I says, 'Have you hurt yourself?' 'No.' He got up and went on, and I says, 'Mr. Bishop, I can't work here unless you get a rope and a ladder for me to put in for a few days until I get through this job.' 'All right, Mr. Kettleson,' he says, 'you go over there and get that rope and put that up, and I will help you.' I went over and got the rope and put the rope in, and so the ladder didn't go in. I went down and got some lagging and went up there, and I put in three lagging that day. I asked Bishop if he wouldn't put in a rope for me, and he says, 'Yes.' I had to have a rope and a ladder in there. If I had fell down or slipped on anything on this rotten ground, so I wouldn't fall down and be killed. He says, 'All right. Put that rope in.' So I had to take up another lagging, and I drove my candlestick into the wall, and took another candle and went down to get the lagging. And these timbers was lying down there in this place, and I slipped on that, and I went down about fifteen or twenty feet, and tried to get hold of this rope, and the ladder wasn't there, and the first thing I knew I knew I got senseless, and the ladder and rope wasn't there, and I went down about seventy feet to the bottom of that chute." He subsequently testified that he went down 35 or 40 feet. He testified further that with a rope and ladder the place where the accident occurred was safe, but without them he would not have worked there. It appears from the evidence that, after the plaintiff had placed the rope in the chute for his own safety, a fellow workman took it away, and the testimony on the part of the defendant was that the rope was taken away by plaintiff's permission. The plaintiff, on the other hand, denied that he gave any such permission, and testified that Bishop admitted to him after the accident that he had taken the rope away; that it was needed over in another place to take up some lumber. The witnesses for the defendant contradict the plaintiff as to all the material facts of the case. Bishop, the shift boss, testifies that the rope was placed in the chute at his suggestion, so that the plaintiff would have something to take hold of; that the plaintiff got the rope and placed it in the chute; that on the following morning the witness saw plaintiff in the manway, and asked him where the rope was; he replied that it had been taken the night before to pull up some timbers; that witness advised plaintiff that he had better go and get the rope, so that he would have something to take hold of; and that plaintiff replied that he did not need it. Plaintiff testified that in the conversation he had with Bishop on the morning after he had placed the rope in the chute, and about half an hour before the accident, he said to Bishop: "You are going down now. Will you please look out for that ladder, and get that solid there if I need it, and the rope there, too?" and Bishop said, "I will attend to it right away." Bishop testified that a ladder was never mentioned, that there was no necessity for

a ladder, and that he did not admit to plaintiff that he took the rope away. The defendant introduced a number of other witnesses in support of the claim that the rope was removed with the knowledge and consent of plaintiff. Upon this conflicting testimony the case was submitted to the jury, under the instructions of the court. The jury returned a verdict in favor of the plaintiff in the sum of $10,000.

The case is brought here upon assignments of error relating to instructions to the jury, but the error mainly insisted upon in this court is the refusal of the trial court, upon the conclusion of the evidence in the case, to instruct the jury that the evidence was not sufficient to sustain a verdict in favor of the plaintiff, and the refusal of the court to direct the jury to return a verdict in favor of the defendant.

Dolph, Mallory, Simon & Gearin, for plaintiff in error.

Thomas O'Day and F. C. Robertson, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts). The evidence was not sufficient to sustain the verdict in favor of the plaintiff, and the jury should have been so instructed. Plaintiff had himself placed the rope in the chute on the day before the accident for his own safety, and he testified that the chute was not safe without it. He nevertheless ascended the chute on the morning of the accident without it, and claims that he did not notice the absence of the rope. Clearly, these two situations are inconsistent. If the chute was unsafe without the rope for persons ascending or descending, plaintiff must have observed the absence of the rope when he climbed up the chute in going to his work, and assumed the risk. Again, after ascending the chute on the morning of the accident, he had a talk with Bishop, and claims to have told him to look out for the ladder and the rope. Why did he refer to the rope, unless he knew that it had been removed? He knew there was no ladder there, and he must have known that the rope was gone. His testimony indicates that he had this knowledge, but, whatever view may be taken of his testimony, the actual situation was open to his observation, and he must be held to have assumed the risk when he undertook to descend without the rope. He was a miner of 27 years' experience, and was familiar with the place where he was at work; and whether the chute was nearly perpendicular, as he claims, or had an angle of 41 deg., as determined by defendant's measurements, he knew or must have known that the rope he had placed in the chute had been removed; and the fact that he requested Bishop to look out for it seems to be conclusive as to plaintiff's knowledge of the situation. It is a well-established rule that where a servant enters upon or continues in a dangerous employment with either knowledge of the danger, or full opportunity to observe the conditions making the employment dangerous, he assumes the risk of such employment. Kansas City Ry. Co. v. Billingslea (C. C. A.) 116 Fed. 335; Terry v. Schmidt (C. C. A.) 116 Fed. 627.

Is there anything in the testimony tending to relieve plaintiff from this position? There is certainly nothing, unless it be assumed that he knew of the absence of the rope, and that just before the accident he requested Bishop to look out for it, and that Bishop promised he would do so. But with respect to this aspect of the evidence, it is

sufficient to say that it does not follow that the defendant was bound by this promise, if made, since the evidence does not show that Bishop had any authority to make such a promise; and the allegation in defendant's answer that Bishop suggested to plaintiff the use of the rope as a means of safety cannot be construed as an admission that Bishop was acting for the defendant in that behalf. If, on the other hand, it be assumed that plaintiff was not informed of the removal of the rope, the same result follows. The evidence does not show that Bishop had authority to bind the defendant to the maintenance of the rope as plaintiff had placed it, or to restore it if removed. In the absence of such evidence, the conclusion is unavoidable that, in procuring and using the rope in the manner and under the circumstances described by plaintiff, Bishop and he were acting in the relation of fellow servants; and, as a result, the failure of Bishop to restore the rope before the accident, as claimed by plaintiff, cannot be held to be the negligence of the defendant. From what has been stated, it is apparent that the plaintiff was not entitled to recover, upon the most favorable consideration of the testimony on his behalf.

The judgment of the Circuit Court is reversed, and the cause is remanded, with instructions to grant a new trial.

GILBERT and ROSS, Circuit Judges, concur in the judgment on the ground that it appeared from the evidence, without conflict, that the rope that the defendant in error himself placed in the chute for protection—and, having which, he willingly undertook the work in which he was engaged when injured—was subsequently, and while he was so engaged, removed by a fellow servant, for which act, whether with or without the consent of the defendant in error, the master was not responsible.