[No. 5210.]
[No. 2821 C. A.]

Maloney v. The Florence & Cripple Creek Railroad Company.

Allen v. The Florence & Cripple Creek Railroad Company.

1. **Railroads—Master and Servant—Injuries to Servant—Safe Place to Work—When Rule Applies.**

The duty is imposed upon a master to furnish a safe place for his servant to work only when the place is permanent in character and has been prepared or furnished by him, and does not apply when the servant is engaged in making a place safe

that is known to be dangerous, or in putting an insecure place in condition for the resumption of use.—P. 388.

**2. Same.**

Where railroad employees were ordered at night to assist in the removal of rock and earth from a cut, which had fallen on the track from a landslide, and while so working some of them were killed by a large rock falling from the mountain side of the cut from which the slide came, the railroad company is not responsible for failing to furnish them a safe place to work. —P. 390.

**3. Same—Inspection by Fellow-Servants—Assumed Risk.**

In an action against a railroad company for the death of certain section foremen, caused by the alleged failure of the company to furnish them a safe place to work, the evidence disclosed that these employees, together with others, including the roadmaster, were engaged in the night-time in removing earth and rock from the track, where it had fallen from a landslide into a cut; that during the afternoon, and before the arrival of deceased and the roadmaster, another foreman in charge of the cut had been warned that the mountain side of the cut from which the slide had come was dangerous; that, in the evening, upon the arrival of the roadmaster, accompanied by deceased and others, the same foreman stated to the roadmaster, in the hearing of some of the men, that he had examined the place, and it was all right; and that, thereafter, a large rock rolled down from the place of the slide and killed deceased while engaged in said work. Held, that it must have been apparent to deceased that no inspection had been made of the place except by one engaged in the common work; and, if such a one was negligent, that it was the negligence of a fellow-servant, of which the representatives of deceased cannot complain.—P. 390.

*Appeal from the District Court of Fremont County. Hon. Jesse G. Northcutt, Judge.*

Actions by Edith P. Maloney and by Mary S. Allen against The Florence & Cripple Creek Railroad Company, by consent consolidated for trial. From judgments in favor of defendant in each case, plaintiffs appeal.                    *Affirmed.*

Mr. CHAS. D. BRADLEY and Mr. JAMES H. MAUPIN, for appellants.

Mr. HENRY M. BLACKMER, Mr. KARL C. SCUYLER and Mr. WALTER F. SCUYLER, for appellee.

These cases were originally brought by the appellants respectively. The facts being the same in each, they were by consent consolidated for trial. The facts are substantially as follows:

The Florence and Cripple Creek Railroad Company owns and operates a railway between the towns of Florence and Cripple Creek. A considerable portion of the road is built through a rough, mountainous country, necessitating frequent cuts along the mountain side. In the early afternoon of the 11th of April, 1901, a landslide came down from the mountain side of a cut about 30 feet in height and nearly perpendicular, at a point on the road about two miles north of the station of Adelaide, covering the track in what is known as a "thorough cut" for fifty feet in length, and to the depth of six or eight feet, with rock and earth, completely obstructing the passage of trains. John McGrath, who was foreman of the section upon which this slide occurred, with one man, commenced preparation for removing the fallen rock and earth. About four p. m. a conductor of a southbound freight train, which was stopped by the obstruction, went to Adelaide and telegraphed information of the occurrence to some managing officer. About five p. m. Miles McGrath, roadmaster and superintendent of bridges upon defendant's road, then at Florence, in pursuance of an order of the train master of the road, prepared a work train consisting of flat cars and started to the place of the slide, gathering up on the way all the employees of the road, among them Timothy J. Maloney and Jackson P. Allen, who were foremen on other sections. This train arrived at the place of the obstruction about eight p. m. The cars were pushed up to

the rock and earth lying in the cut.  It was then quite dark, and the only light available was furnished by lanterns and such light as reached the north end of the cut from the headlight of the freight engine, which, by reason of a curve in the track, did not reach the south side of the cut, and by a small bonfire, which lasted but a few minutes.

After the arrival of Miles McGrath no inspection of the mountain side of the cut from which the slide came was made.   The conductor of the freight train, when he met Miles McGrath at Adelaide, stated to him that, from what he observed while at the place, he was of the opinion that there was danger of rock falling at the cut.   The attention of John McGrath, foreman of the section, and who was in charge of the work, while it was still daylight, was called by Harris, a brakeman on the freight train, to a crevice at the side of the rock on the mountain side, who expressed the opinion that it was dangerous.

During the afternoon, John McGrath warned two men not to go through the cut because it was dangerous.   Upon arriving at the obstruction, several of the foremen went to Miles McGrath, and one of them, in the presence of the others, asked him if the place had been examined and was all right, whereupon John McGrath, who was also present, said in their hearing to Miles McGrath, "Yes, I examined it before dark, and it is all right."   Upon hearing that statement, the foremen with their men, including Maloney and Allen, went to work loading the fallen rock upon the cars and the work continued until about nine o'clock p. m., when a large rock fell from the mountain at the south side of the cut, killing Maloney and Allen and some others.

The appellants, who are the widows of the deceased, seek to recover damages which they allege they have sustained by the death of their respective

husbands, which they aver was caused by the negligence of the company by not ascertaining by proper inspection the dangerous condition of the premises; and in failing to prop and support the cliff of rock, or rock wall, so as to prevent the same from falling; and in not advising said Maloney and Allen of the dangerous condition of the work; and in not furnishing sufficient light to enable them to observe the safe, or unsafe, condition of the place; and in failing to provide a safe place in which to work.

Upon the conclusion of the plaintiffs' testimony the court, on motion, directed verdicts in favor of defendant, and upon the return of said verdicts the court entered judgment dismissing said causes, and for costs against plaintiffs. From this judgment plaintiffs prosecute an appeal.

Mr. JUSTICE GODDARD delivered the opinion of the court:

The rule that imposes upon an employer the duty to furnish a reasonably safe place for his employees to work in is not applicable to the facts in this case. This duty is imposed and enforced when the place is permanent in its character, and has been prepared or selected by the master himself, or by others upon whom have devolved the discharge of the master's obligation in this respect; but does not apply where the servant is engaged in making a place safe that is known to be dangerous, or putting an insecure place in condition for the resumption of labor or use. In such case, the danger is necessarily incident to the work itself, and depends upon constantly changing conditions, and can only be guarded against by the care of the servants engaged in its performance.

In the case of *Florence & C. C. R. Co. v. Whipps*, recently decided in the circuit court of appeals, 138

Fed. Rep. 13, which involved the responsibility of this appellee for the death of one Whipps, who, while engaged in the same service, was killed at the same time, and under the same circumstances, and by the falling of the same rock, that killed Maloney and Allen, Judge Lochren, who delivered the opinion of the court, in distinguishing that case from those in which the rule as to "safe place" applies, used the following language:

"In many cases of preparatory work to fit a place for its intended use, like the excavation along a mountain side of a cut for a railroad track, the work so prosecuted will make the place which was safe before dangerous to the servants, as their work progresses, from the liability of stone or earth to slide down the sides of the cuts so made by the same servants, who must be held to have assumed all such risks; * * * and in the removal of *debris* after some catastrophe or accident which has made the place unsafe and unfit for the use to which it has been devoted, and where the very object of the work is to clear away the wreckage and restore the place to a condition of safety and usefulness. If by such catastrophe a railroad used for the transportation of passengers, freight and mails is obstructed, the removal of the obstruction is a necessity admitting of no delay, whether the exigency arises in the daytime or at night; and servants employed, who undertake and engage in such work, necessarily assume the incidental risks.—*Gulf, etc., Ry. v. Jackson,* 65 Fed. 48, 12 C. C. A. 507; *Minneapolis v. Lundin,* 58 Fed. 525, 7 C. C. A. 344; *Porter v. Silver Creek, etc., Coal Co.,* 84 Wis. 418, 423, 54 N. W. 1019; *Colo. Coal & Iron Co. v. Lamb,* 6 Colo. App. 255, 266, 40 Pac. 251; *Carlson v. Railway* (Ore.), 28 Pac. 497. The fact that the exigency causes the work to be done in the darkness of night and with insufficient lights does not

lessen the assumption of the risks of the servants.—
*Gulf, etc., Ry. v. Jackson*, 65 Fed. 48, 51, 12 C. C. A.
507. * * * The defendant was not responsible
for the catastrophe and wreckage which caused what-
ever danger there was in the situation, and under
such circumstances the doctrine of 'safe place' had
no application.''

The same rule is announced in *City of Greeley
v. Foster*, 32 Colo. 292, and in *C. C. & I. Co. v. Lamb*,
6 Colo. App. 255.

The company, therefore, was not remiss in the
performance of any duty in failing to furnish a safe
place for the deceased to work in, and it is equally
clear that under the existing conditions it would have
been impracticable to prop or support the embank-
ment so as to prevent the rock from falling. It
only remains, therefore, to consider whether, in the
circumstances of this case, the appellee was delin-
quent in the performance of any other duty it owed
to the deceased.

Counsel for appellants insist that it was incum-
bent upon appellee to have made a careful and dili-
gent examination of the premises before the men
were permitted to work therein. There is no evidence
as to what inspection, if any, was made by John
McGrath, the foreman of the section, during the
afternoon; or what disclosure, if any, as to the result
ascertained by such examination, or as to the condi-
tion of the premises, was made to the deceased. It
does, however, appear that, in response to an inquiry
by some one of the foremen, John McGrath stated to
Miles McGrath in the presence and hearing of some
of the men that he had examined it before dark, and
it was all right. It was apparent to all, including
the deceased, that no inspection other than that made
by John McGrath, or some one employed with them
in the common work, had been made, and with this

knowledge they entered upon the work. If he was negligent in his examination, it was the negligence of a fellow-servant of which they cannot complain, and the deceased had no right to assume that any inspection other than that by a fellow-servant had been made.

Judge Lochren, in the opinion above referred to, in discussing this phase of the case, said:

"Here all the servants, including the foremen and the roadmaster, were, when the disaster happened, engaged in the common work and enterprise of keeping the railway in proper condition for the passage of trains. The disaster caused an instant sudden emergency in the very work in which they were engaged. An emergency admitting of no delay—not even for daylight—certainly not for the summoning of the managing officers of the railway or of its engineers. The work to be done was simply the rough work of clearing the tracks of the fallen rocks, which the servants, under their foremen and roadmaster, were entirely competent to perform. The circumstances and conditions must have made it plain to all that no inspection or precaution respecting the cliff was or could have been had except by such of the servants as were there while it was daylight. Under these circumstances the servants who came later, as well as those who were there in daylight, assumed the risk of the employment they engaged in; and if John McGrath or Miles McGrath were negligent in representing the place to be safe, that was negligence of fellow-servants.—*Northern Pacific Ry. Co. v. Dixon,* 194 U. S. 338, 343, 24 Sup. Ct. 683, 684, 48 L. Ed. 1006; *Pennsylvania Co. v. Fishack,* 123 Fed. 465, 59 C. C. A. 269."

Upon a careful consideration of all the facts disclosed by the record, we think the court below prop-

erly directed a verdict in favor of appellee. The judgment is therefore affirmed.        *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE BAILEY concur.