Porter, Respondent, vs. Silver Creek & Morris Coal Company, Appellant.

*February 27 — March 21, 1893.*

*Master and servant: Injury to servant: Dangerous place for work: Negligence of fellow-servant.*

Defendant's coal dock was not in use, but was undergoing extensive repairs, and plaintiff, a carpenter, was at work on one of the chutes. An engineer who was adjusting the cable on a movable derrick had allowed the slack of the cable to drop down into the chute, but plaintiff had not noticed it. Without any warning the engineer, who could not see plaintiff in the chute, started the machinery of the derrick, thereby raising the cable in such a way as to injure plaintiff. In the ordinary course of the business the cable was always far above the chute, and none of defendant's officers knew that it was in the chute or liable to be there or had ordered it put there; nor had plaintiff been directed to take the position in which he was when injured. *Held*, that the danger to plaintiff was

one which defendant could not reasonably anticipate, and that the negligence, if any, causing the injury was that of a fellow-servant, the engineer.

CASSODAY, J., and ORTON, J., dissent.

APPEAL from the Circuit Court for *Douglas* County.

Action for personal injuries. The following facts appeared upon the trial by the evidence of plaintiff and his witnesses, and were substantially undisputed:

The accident occurred on the defendant's coal dock at West Superior. This is a long dock, extending out into the water so that vessels can come up on either side to be unloaded. · Down the center of the dock are two railroad tracks, upon which railroad cars are switched for loading. On both sides of these tracks, and about six feet from the outside rails, are high partitions or bulkheads, built of heavy planks, extending the whole length of the dock. The coal unloaded from the vessels is heaped up against the bulkheads, and from the bulkheads are spouts or chutes by means of which the coal is loaded into the cars. Over the railroad tracks, and high enough so that the cars can run beneath the same, are built several trestles or derricks. These derricks are upon wheels or tracks, so that they can be moved up and down the center of the dock. Upon each derrick is built a small house, called an "engine house." These houses are above the top of the bulkheads. On the top of each house is a long crane or arm reaching to the outer edge of the dock. These are used for unloading vessels, and for scraping the coal up against the bulkheads. The crane mentioned in this suit was almost horizontal, the outer end being a little higher than the top of the engine house. When used for the purpose for which it was constructed and designed, a cable passed from a drum in the engine house along the crane to the end thereof, over a pulley, and suspended a scraper or shovel. From the bottom of the shovel a cable passed back to another drum in

the engine house. Power was applied to these drums by means of levers, and when in use the drums revolved in opposite directions, so that when the upper cable was being let out the lower one was being drawn in, and *vice versa.* These cables were thus kept almost taut, and were above the bulkheads, and above the heads of any one in the chutes or upon the platform between the tracks and bulkheads. The cables passed into the engine room through a little door or window. The engineer, when operating the drums, can only see the cables, and cannot see men working below in the chute right opposite to the engine.

Some time prior to August 6, 1891, a heavy wind storm had blown down the derricks, cranes, and chutes, and had generally damaged the machinery and woodwork on this dock, so that it was necessary to make extensive repairs to the dock and its machinery to prepare it for handling coal. The machinery had not been used for a long time prior to the accident. On August 6, 1891, plaintiff was employed by the defendant. Plaintiff was thirty-eight years of age, was a "carpenter and jobber by piece," and had worked at such business since he was fifteen years of age. Plaintiff was employed to make repairs generally, and was informed of what had caused the damage. He assisted in putting up and repairing the bridges. All the men were engaged in making general repairs to this dock.

On the morning of August 17th the plaintiff, together with other carpenters, was directed by defendant's superintendent to remodel and repair the coal chutes. They were directed to commence upon the first chute at the south end of the dock. They partially completed the first two chutes about 8 or 9 o'clock in the morning, then skipped several chutes, apparently because cars were in the way, and worked at others further down the dock, and about half past 10 or 11 o'clock returned to finish the first two chutes. The derrick and engine house herein men-

tioned were opposite the second chute during all the time they were working there. The plaintiff had noticed it. During the time that the plaintiff was away from the first two chutes and working at the other chutes, the engineer, in the course of repairing the machinery, strung or suspended the cables heretofore mentioned, and allowed the slack of one of the cables to drop down into the second chute. When plaintiff returned to finish the first two chutes, and while working in the second chute, the engineer started his engine without warning to get the cables in place, and as part of the work of repairing the dock and getting it in shape to handle coal. The slack of the cable in the chute was drawn up between the legs of the plaintiff, lifted him up, and let him fall upon a brace in the chute, thus causing the injuries complained of, which were quite serious.

The plaintiff testified that he did not see the cable lying in the chute. He was not warned that the engine would be started or the cable lifted, or that the place he was working in was dangerous. The engineer had no special orders to start his engine on that day or at that particular time. He did it in the course of his usual duties in repairing the machinery of the dock and getting it in order for the transaction of business.

A special verdict was rendered, in which the jury found, in response to appropriate questions, (1) that defendant failed to furnish a reasonably safe place for plaintiff to work in, and failed to use ordinary care to protect him from danger while at work; (2) that such failure was the proximate cause of plaintiff's injury; (3) that the injury was not caused by want of ordinary care on the part of the engineer; (4) that plaintiff was not guilty of contributory negligence; (5) that plaintiff's damages were $5,000. From judgment for the plaintiff on this verdict, defendant appeals.

For the appellant there was a brief by *Ross, Dwyer, Smith & Hanitch,* and oral argument by *Louis Hamilton.* They argued, among other things, that if an employer directs his workmen to do certain work, leaving it to them to provide the structures and appliances required for its prosecution, he may be responsible only for care in selection of the men and material assigned for it. *Arkerson v. Dennison,* 117 Mass. 412; *Peschel v. C., M. & St. P. R. Co.* 62 Wis. 343; *Howland v. M., L. S. & W. R. Co.* 54 id. 226; *Bessex v. C. & N. W. R. Co.* 45 id. 482; *Dwyer v. Am. Exp. Co.* 82 Wis. 307. If the servants undertake to use machinery or instruments for purposes for which they were not designed and for which the employer had no reason to suppose they would be used, it is their own fault or folly if harm comes from it. *Felch v. Allen,* 98 Mass. 575; *Baron v. D. & C. S. N. Co.* 91 Mich. 585. The place of work having been made unsafe by the carelessness of a fellow-servant, the plaintiff is not entitled to recover. *Baron v. D. & C. S. N. Co.* 91 Mich. 585; *Armour v. Hahn,* 111 U. S. 313; *Cooper v. M. & P. du C. R. Co.* 23 Wis. 668; *Howland v. M., L. S. & W. R. Co.* 54 id. 226; *Peschel v. C., M. & St. P. R. Co.* 62 id. 338; *Toner v. C., M. & St. P. R. Co.* 69 id. 188; *Ewald v. C. & N. W. R. Co.* 70 id. 420; *Hussey v. Coger,* 112 N. Y. 614.

For the respondent there was a brief by *Thos. E. Lyons* and *Heber McHugh,* and oral argument by *Mr. Lyons.* They contended, *inter alia,* that it is the duty of a master to furnish his servants a suitable and safe place to work, and he cannot relieve himself from such responsibility by delegating this duty to a subordinate. *Van Dusen v. Letellier,* 78 Mich. 502; *Ell v. N. P. R. Co.* 1 N. Dak. 336; *Sadowski v. Mich. Car Co.* 84 Mich. 100; *Morton v. D., B. C. & A. R. Co.* 81 id. 423; *Dorsey v. P. & C. C. Co.* 42 Wis. 583; *Smith v. Peninsular Car Works,* 60 Mich. 501; *Brabbits v. C. & N. W. R. Co.* 38 Wis. 289; *Nall v. Louis-*

*ville, N. A. & C. R. Co.* 129 Ind. 260; *Propsom v. Leatham,* 80 Wis. 608; *Breen v. Field,* 31 N. E. Rep. 1075. If there exist facts known or which ought to be known to the employer, and unknown to the employee, increasing the risk of such employment beyond its ordinary hazards, the employer is bound to disclose such facts to his employee; otherwise he will be liable as for negligence in case of injury to the latter resulting from such unusual risks. *Strahlendorf v. Rosenthal,* 30 Wis. 674; *Naylor v. C. & N. W. R. Co.* 53 id. 661; *Steffen v. C. & N. W. R. Co.* 46 id. 259; *Smith v. Peninsular Car Works,* 60 Mich. 501; *Baxter v. Roberts,* 44 Cal. 187; *Farmer v. C. I. R. Co.* 67 Iowa, 136. The master will be liable in damages even though the immediate cause of the injury is the negligence of a co-employee. *Jones v. Florence M. Co.* 66 Wis. 269; *New Jersey & N. Y. R. Co. v. Young,* 49 Fed. Rep. 723; 7 Am. & Eng. Ency. of Law, 828; *Nall v. Louisville, N. A. & C. R. Co.* 129 Ind. 260; *Ind. Car Co. v. Parker,* 100 Ind. 181; *Hulehan v. G. B., W. & St. P. R. Co.* 58 Wis. 319; *Stetler v. C. & N. W. R. Co.* 46 id. 497; *Sherman v. M. R. L. Co.* 72 id. 122; *Grand Trunk R. Co. v. Cummings,* 106 U. S. 700.

WINSLOW, J. The plaintiff's injuries were serious, and the jury have exonerated him from negligence, but these facts alone do not entitle him to recover. The question is whether the evidence shows, or tends to show, any negligence on the part of the defendant. We are of the opinion that this question must be answered in the negative. The only ground upon which such negligence can be claimed is that the defendant furnished the plaintiff an unsafe place to work, and did not warn him of the fact that the cable was in the chute and would be lifted. Had the machinery of the dock been in regular operation handling coal, and had this lifting of the cable from the chute been one of the

Porter vs. Silver Creek & Morris Coal Co.

incidents of such operation, regularly or occasionally recurring, the argument would be strong that negligence could be predicated upon the failure to warn a new and inexperienced employee of such fact. Such, however, was not the situation. The docks, structures, and machinery were not in use. They were undergoing repairs and rebuilding made necessary by a recent storm. The situation was substantially the same as if they were in process of erection. Now, in the original erection of buildings or structures the rule that the master must furnish a safe place to work can have manifestly very limited application. In the handling of building materials, the adjusting of machinery, and the many operations that are continually .going on in the process of building or rebuilding, dangers constantly must arise against which no foresight can provide or warning be given. A place which is perfectly safe at one moment may become full of danger the next moment. Were the employer held to the duty of providing at all times a safe place for the builder to work, or of warning him of a possible future danger, we apprehend few would undertake to build or repair any structure. Such a rule of diligence would be too grievous to be borne. The rule is well stated in *Armour v. Hahn*, 111 U. S. 313, as follows: "The obligation of a master to provide reasonably safe places and structures for his servants to work upon does not impose on him the duty, as towards them, of keeping a building, which they are employed in erecting, in a safe condition at every moment of their work, so· far as its safety depends upon the due performance of that work by them and their fellows."

In the present case the plaintiff and the engineer who started up the engine were engaged in a common enterprise, namely, the repairing of the docks and machinery, and putting them in order for the transaction of business. They were co-employees, within the decisions of this court.

*Ewald v. C. & N. W. R. Co.* 70 Wis. 420. The engineer was adjusting or hanging the cable upon the drums; the plaintiff was repairing a coal chute. In the course of the engineer's work the cable was for a time lying in the chute. He started the engine and drew it up, and thus made the plaintiff's position over the chute dangerous, while a moment before it was entirely safe. The cable was never in the coal' chute in the ordinary course of the business, but was always far above the chute. No official or superintending officer of the company knew of the fact that the cable was in the chute or was liable to be there, or ordered it put there. It was out of the usual course of business, and could not reasonably be anticipated. Nor was the plaintiff directed to take the position which he did over the chute. Certainly, the defendant could not be held to be obliged to warn the plaintiff of a danger which no one could reasonably anticipate.

We think it very clear that no negligence can be imputed to the defendant under the circumstances, and that if there was negligence it was that of the engineer, his co-employee. The case is very clearly distinguishable from the case of *Sherman v. Menominee R. L. Co.* 72 Wis. 122, and the cases cited in the opinion in that case. There the defendant was held liable for injuries resulting from the use in its business of defective machinery, which it had negligently permitted to remain in such defective condition. There is no such question here. Nor is there anything in the case of *Luebke v. C., M. & St. P. R. Co.* 59 Wis. 127, in conflict with the principles here announced. In the latter case a car repairer was sent under a freight car standing on a side track to make repairs to the car. The track was not a regular repair track, but a track used for making up trains, and in the course of the regular business of the company an advancing train struck the car while he was under it, and injured him. The answer admitted, and

Porter vs. Silver Creek & Morris Coal Co.

the court held, that ordinary care required that under such circumstances a watchman should have been stationed to warn the plaintiff of approaching trains.   Here was a dangerous contingency which was reasonably to be anticipated in the regular course of business, and consequently the company owed the duty to the plaintiff of warning him of the danger.   As before remarked, the danger in the present case was one which the defendant could not reasonably anticipate.   The distinction is very manifest.

These views necessitate a reversal of the judgment.

CASSODAY, J.   I am forced to dissent from the decision in this case.   The effect of it is to relieve the defendant, as employer, from the duty of furnishing to the plaintiff, as its employee, a reasonably safe place in which to work. The law on the subject is too well settled to require further discussion.   The only ground for any difference of opinion is in the application of the rule.   The plaintiff was ordered by the defendant's superintendent to repair the chutes.   The lower ends of them were five or six feet above the platform. The plaintiff got up into the chute by means of a ladder. One end of the cable, with attachments, appears to have been in the chute at the time, unobserved by the plaintiff, and the other end was fastened to machinery liable at any time to be started by the manipulations of the engineer. The engineer did start the machinery, which took up the slack in the cable, and the appliances thereto attached at the chute, caught the plaintiff and took him up into the air, from whence he fell head first, and was very badly injured. The jury found that the engineer was not negligent, and manifestly he was not, as he was in his accustomed place upon the derrick, inclosed where he could not see the plaintiff and the plaintiff could not see him, and he had no instructions to give any warning.   Thus it appears that the plaintiff was directed to work in a place of imminent but

Lawrence vs. Milwaukee, Lake Shore & Western R. Co.

unforeseen danger, of which he had no knowledge or warning. I think the defendant, as master, was bound to know that the engineer was liable to start the machinery at any time without warning, and thus imperil the safety and life of the plaintiff.

ORTON, J., fully coincides in the above opinion of CASSODAY, J.

*By the Court.*— Judgment reversed, and cause remanded for a new trial.