(38 South. 72.)

No. 15,218.

LEVINS v. BANCROFT, ROSS & SINCLAIR.*

(Jan. 4, 1905.)

INJURY TO EMPLOYÉ—ASSUMPTION OF RISK—NEGLIGENCE OF ANOTHER EMPLOYÉ.

1. The fact itself of the happening of an accident does not prove or even tend to prove negligence on the part of the servant.

2. The one by whom an appliance was used failed to use it properly, and failed to close it down as should have been done. The result was an accident to plaintiff.

3. It was not foreseen by the injured workman, nor could it well have been foreseen, that an employé of defendants would use this appliance whilst he was away attending to other work, and he (plaintiff) could not see him from where he was.

4. On the injured workman's return to the place where the appliance was, he met with the accident caused by the improper and negligent use made of it by the employé of defendants. It became dangerous owing to the negligence of this employé.

5. The danger was not apparent, and the workman did not assume the risk of the employment.

6. The master is liable for the negligence of the servant within the scope of his employment.

7. The fellow workman's doctrine is not in the case. The employé was working in a different department.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Henry S. Levins against Bancroft, Ross & Sinclair. Judgment for plaintiff, and defendants appeal. Affirmed.

Joseph Oscar Daspit and Fenner, Henderson & Fenner, for appellants. Stafford & Lambert and Frank McGloin, for appellee.

---

*Rehearing denied February 13, 1905.

BREAUX, C. J. This suit was brought by plaintiff to recover damages in the sum of $11,000 for personal injury for which plaintiff alleges that Bancroft, Ross & Sinclair are liable. The jury's verdict was in his favor for $3,500.

Plaintiff was on the 14th day of January, 1902, an employé of defendants, and had been in their employ during the preceding four months.

He was their engineer, at a salary of $1.75 a day, and had charge of their engine and boiler, and, in that place or position, plaintiff alleges that he was in charge of the engine room, and of the appurtenances therein, and he oiled the engine, cleaned it, wheeled coal from the coal pile outside of the building to the coal bunker inside, and fed the boiler furnace with coal.

The record discloses that the defendants are the lessees of the foundry known until recently as the "McCan Foundry," on Tulane avenue. Within the foundry building there is a steam well, near to and in front of the engine—dug there in the earth by lessees' lessor, to wit, Mr. McCan.

There was a cap over the so-called manhole on the well.

One of the points of difference between the plaintiff and defendants is whether there was necessity to step, as did the plaintiff, on this cap, or whether, as contended by defendants, it was equally as convenient to pass around the well.

The engine room is not large, but cramped, as such rooms usually are. The well in question was about equal distance between the breastplate or platform of the engine, on one side, and a part of the boring mill which projected into the engine room, with little distance on either side.

The top of the well itself was flush with the floor. When the cap was fastened properly, it (the cap) rose slightly above the level of the floor. The well was in the passageway which the engineer and others followed

in passing from one side to the other, and directly in front of the engine.

Plaintiff, while wheeling coal on the day he met with the accident, was away from the engine about 35 feet, and could not see it. After the last wheelbarrow of coal had been brought in, he stepped to the engine, and found that it was greatly in need of oil. He applied himself to that work. He stepped on the cap over the manhole with his right foot, and raised his left to tread on the engine platform.

The cap over the manhole, having been raised by some one to take water, and not having been returned to its socket, gave way, and plaintiff's foot and leg passed through to the bottom of this well, which was filled with warm steam and hot water. It scalded him severely. He was disabled for a time, and still feels its effects. His physician testified that he has an atrophy of the leg.

The warm water taken from the well is used freely by the workmen in washing their hands, twice a day. It happened frequently enough that one of the employés would go and get the water—usually one of the young apprentices. He was told by one of the officers to bring warm water to the washing room in the afternoon at about a quarter of 5. He attended to that duty with some care, and no casualty occurred. On the day that the plaintiff's foot and leg were injured, another boy went for water. He said that on the way he met plaintiff, and asked his permission to take water out of the well, which plaintiff gave; that, on his return from the well with the water, he again met the plaintiff, and said to him that he had carefully fastened the lid. This boy or young man, as a witness, stated that he had carefully returned the lid to its socket, pressed it down, and afterwards jumped and stamped upon it to make it certain that it was in its place. He also said something about the danger there was, and some things

which do not seem to have impressed either judge or jury.

The record informs us that there were two small holes drilled in the cap, as an escape for the steam from the well, and to relieve the well of the possibly too great a pressure of the steam.

The steam, oozing through these holes, collected on or about the lid.

The shape of the bottom of this well is like that of a pot or kettle.

A rough sketch is annexed. The line between A and B in this sketch indicates the passageway. After the accident the lid in question was fastened and made secure. When in its socket it is not dangerous.

At the outset, in taking up the different questions presented for our decision, we state that we are not of the opinion that plaintiff was guilty of the gross carelessness and negligence charged by defendants. The well was in the foundry. It had been used many years without any accident. We take it that it was not unsafe when due care was taken in using it. At any rate, if there was any danger, it was not apparent. Nearly all machinery moved by steam becomes dan-

gerous in negligent hands, such as those by whom the "cap" in question was removed.

As the well was safe enough prior to the removal of the lid or cap, we do not consider that the condition of the well itself shows plaintiff's negligence.

In the second place, defendants seek to sustain the proposition that, if the cap on the manhole was left unfastened, it was owing to the fault of plaintiff, who should have reported to them that some of the men were taking water from the well, and there was danger that they would fail to return the cap to its proper place.

That is expecting too much of a mere engineer, who has nothing to do with the men. No one else expected the danger. Why should more be expected of him than of the others? It had become usual with the men to get water from this well. At the date plaintiff was employed by the defendants, the men were taking water from this well. It would have placed him in a singular attitude towards his fellow workmen if he had attempted to stop them because of an asserted danger which nobody suspected. He was in charge of the machinery, and had nothing to do with the discipline of the men.

The defendants, in the next place, urge— and this, in our view, is the most serious ground of their defense — that plaintiff should not have undertaken to tread on the cap; that he should, on the contrary, have stepped over it or around it.

We have paused here, and have given that ground our most serious consideration. We gather from the record, that the cap's surface was part of the surface of the floor, and that it was, prior to its removal, and failure to return it to its socket, properly about on a level with the floor.

Ordinarily it must have been considered safe enough to step on it. But it is contended that it was not in its proper place, and that this was possible for plaintiff to see. It must be remembered that there was steam over the head of the well, kept down by the pressure of the cold temperature above it. The accident occurred on a cold day.

This steam, it seems, obstructed the view of plaintiff, who hastily came up and stepped into it—the steam. The cap would have been in its proper place if it had not been removed.

Burns, one of the employés of defendants, removed the cap, and he failed to return it. He stoutly denies that he failed to return the cap. The boy's statement did not convince the judge of the district court or the jury. There is a conflict between his testimony and that of other witnesses. The circumstances do not corroborate his statements. He immediately after the accident became apprehensive that it would be thought that he had not returned the lid. He spoke to plaintiff on the subject, and obtained the answer from him (plaintiff) that he blamed no one. Two witnesses who were present within hearing distance did not hear the statement.

Admitting that this boy was not at fault, some one of the workmen must have moved the cap and failed to return it. Whether it was the fault of the boy in question, or of another employé, it is the same, as relates to liability. The master is liable for all injuries caused by negligence of his servant while the servant is acting within the scope of his employment.

From the testimony we do not infer that any of the servants who took water from the well were acting out of the scope of their employment. Getting warm water and the washing of hands were a part of the operation of the factory. There was nothing secret about getting warm water. It was done in open view of everybody employed, or their officers. There was only one place at which warm water was at hand. Those who went for it took it to the office of the defendant company, and there all those who chose used it to wash their hands. All the testimony of

the witnesses for plaintiff tends to prove beyond all question that this well was used to get water for the workmen. The testimony of defendants' witnesses only faintly controverts this fact.

The well in question contained the water which they much needed to wash their hands.

Taking the foregoing into account, it does not occur to us that plaintiff was at fault in walking hastily through the steam to the relief of the engine, which was in need of oiling. The danger at the well was not apparent, and apparent danger is the danger which the servant assumes. We do not find that, under the circumstances, plaintiff failed to make a prudent and reasonable use of his faculties.

Some stress is laid upon the fact, sworn to by the foreman as well as by the boy Burns, that plaintiff said that he had no one to blame but himself. We do not attach the greatest importance to such a statement, made immediately after an accident, while the witness is suffering with excruciating pains.

He may well. decline to go into particulars of the accident, and he may well cut off all inquiry by· declining to accuse any one, and by saying that he has no one to blame but himself, but yet not be considered to have abandoned his right of action, if he has one.

In order to set aside the verdict and judgment, we would have to hold that plaintiff was guilty of contributory negligence.

We have not found that plaintiff was guilty of contributory negligence and carelessness, of which he is charged.

He did not see the person by whom the lid was removed, and could not see that he (this person) failed to return it to its proper place, nor did he have occasion to suspect that one of the employés would neglect to return it.

In order to find for plaintiff, we would have to hold that he—a mere engineer and all-round man about the engine—owed it to his employers to let them know that they should remove the well from where it had been for years and years, and clear the engine room of a danger no one suspected.

To decide for defendants, we would have to arrive at the conclusion that the master is not responsible for the fault of his employé whilst acting within the scope of his employment.

The amount of the damages is another of the issues.

Plaintiff was unable to work during eight months, and greatly suffered. On the other hand, the defendants are technically liable. The negligence was that of their employé, for whom, under a fiction of the law, they are made liable, as if ·they themselves had been guilty of negligence.

The judge and the jury, who heard the witnesses and saw their manner of testifying, held for plaintiff. We cannot say that they have erred.

The verdict and judgment are affirmed, and appellee's demand to increase the amount of the judgment is rejected.