# CHICAGO, R. I. & P. RY. CO. v. NAGLE.

### No. 6007. Opinion Filed January 11, 1916.

#### Rehearing Denied February 8, 1916.

#### (154 Pac. 667.)

1. **MASTER AND SERVANT — Injury to Servant — Negligence — Proof.** The mere fact that the servant received injury does not establish, even **prima facie**, the negligence or breach of duty of the master.

2. **SAME.** While in the case of a passenger the fact of an accident carries with it a presumption of negligence on the part of the common carrier, a presumption which in the absence of some explanation or proof to the contrary is sufficient to sustain a verdict against it, for there is **prima facie** a breach of its contract to carry safely, a different rule obtains as to an employee. The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employee to establish that the employer has been guilty of negligence.

3. **SAME—Negligence of Master—What Constitutes—Determination.** Whether or not a defendant is guilty of negligence depends upon the question whether he exercised reasonable care under the circumstances existing at the time; not whether he had done everything which it was possible to do in the light of every possible danger that might arise.

4. **SAME.** Negligence must be shown by evidence. Proof of injury is not proof of negligence. The evidence, to justify a finding of negligence, must show a breach of duty on the part of the defendant such that a reasonable person should have foreseen would as a natural consequence cause an injury; not necessarily would probably cause an injury in the sense of more likely to cause an injury than not, but the likelihood must be such that a reasonable person could foresee that injury would result in the ordinary course of things—that injury was one of the probable results and likely to happen. A mere possibility of the injury is not sufficient, where a reasonable man would not consider injury likely to result from the act as one of its ordinary and probable results.

5. **NEGLIGENCE—What Constitutes.** Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances, or doing what such a person would not have done.

6.    **MASTER AND SERVANT—Injury to Servant—Accidental Injuries.** For accidental injuries, or such as occur without any act of negligence on the part of the master, the master is not liable to the injured servant.

7.    **NEGLIGENCE—"Proximate Cause."** In order that an act of negligence may be deemed the proximate cause of an injury, it must be such that a person of ordinary intelligence would have foreseen that the injury was liable to be produced in the act.

8.    **SAME—Determination.** The test of whether an act was the remote or proximate cause of the injury complained of is whether the injury was one to be anticipated.

(Syllabus by Robberts, C.)

*Error from County Court, Seminole County;*
*A. S. Norvell, Judge.*

Action by John Nagle against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*R. J. Roberts, C. O. Blake, W. H. Moore, J. G. Gamble, K. W. Shartel,* and *John W. Willmott,* for plaintiff in error.

*H. L. Harris, S. S. Orwig,* and *T. S. Cobb,* for defendant in error.

Opinion by ROBBERTS, C. This case comes from the county court of Seminole county. The parties herein will be designated plaintiff and defendant, the same as below. One of defendant's freight trains was wrecked on its road near the town of Lima, on or about the 31st day of May, 1913, and several cars were demolished, and the contents misplaced and scattered along the road and right of way. Plaintiff was at the time in the employ of defendant as a section hand, or common laborer, and with a large number of other employees was called to clear the wreckage. While performing these services in removing the debris, and changing freight from the wrecked cars to other cars in good condition, in passing

along the road embankment, he slipped and fell into a ditch, into which some of the debris and broken timbers of the wrecked cars had been thrown by other employees of the company, and in falling stepped or lit upon a nail protruding from a piece of a board in the bottom of the ditch, which board was taken from one of the wrecked cars. The plaintiff details the circumstances under which he was injured as follows:

"Q. Were you injured down there in clearing that wreck? A. Yes, sir; I was. Q. What were you doing at the time you were injured? A. Transferring hay from the right of way to an empty box car. I was loading the car. Q. Had the hay been taken from the wrecked cars? A. Yes, sir. Q. What was the condition of the ground there with reference to the covering of hay on it? A. Well, sir, the wreckage and the woodwork of the cars was scattered and covered up with scattered hay, as some of the wires on the bales was loose from the hay. Q. You had been directed to conduct the work of transferring the hay there at the wreck, had you not, Mr. Nagle? A. The roadmaster gave me orders. Q. Did you sustain any injury as the result? A. Yes, sir; indeed I did, sir. Q. Just state how it happened. A. Now, gentlemen, it was on the 31st night of May, on Saturday night. Q. What were you doing at the time you were injured? A. Transferring hay from the right of way to an empty car, and had come down from the dump with a bale of hay. Q. Did you step on something? A. Stepped on a board, about five inches of a nail went through my foot, and I hollowed to some young fellow, and I turned loose of the hay. The foreman asked me if I could walk, and I climbed upon the right of way, and had to keep my shoe off, and just left the sock on, and he gave me some stuff, and put a bandage on it Saturday night at 10 o'clock, and it stayed on until the following Tuesday afternoon, when I got to the hospital in McAlester. Q. John, did you know that the

board with the nail upturned was there? A. No, sir; I didn't. Q. You didn't step on it, knowing it was there? A. No, sir. Q. That was the first you knew of it? A. Yes, sir; the first I knew of it, sir. Q. Was it there that loose hay was scattered around? A. Yes, sir. Q. What was the condition of the ground around there at the time you were injured, with reference to loose hay? A. That was on part of the ground where the loose hay was, and the hay was the only thing I could see on the ground. Q. Were these cars broken up at the wreck? A. Yes, sir. Q. And the boards which came off of them scattered? A. Yes, sir; and the ends of the cars was busted in order to get the hay out. Q. After the cars had been moved, had the ends been taken out before you begun to load the hay into the new cars? A. Yes, sir; with the exception of one, and that car had been burned. Q. That car was burned? A. Yes, sir. Q. You say that the car to which you were taking and loading the hay was moved so as to be nearer the car that originally contained the hay? A. Yes, sir. Q. Is that correct? A. Yes, sir. Q. How many trips had you made to this car? A. I can't say. When we would get the closest hay, we had to move further, and when we got that car full, we had to go further after the rest. Q. The hay was partly broken up, wasn't it? A. The wires was, sir. Q. When you took the hay out of the cars, a good many bales were broken loose, were they not? A. Yes, sir. Q. And consequently the hay was scattered out? A. Yes, sir. Q. Did you notice this board? A. No, sir. Q. Did you know it was there? A. No, sir. Q. How large was the base of that board? A. The edges, where the nail was, was about six inches, sir. Q. It was a large timber, was it not? A. Yes, sir. Q. About how long was it, John, if you remember? A. About six feet long, and broke in two. Q. Was that timber a part of the wrecked car? A. Yes, sir; part of the wrecked car. Q. You were walking on top of the dump, were you not? A. Yes, sir. Q. And slipped? A. Yes, sir. Q. And fell into the ditch? A. Yes, sir. Q. Struck the nail in the

ditch, didn't you? A. Yes, sir. Q. How deep do you estimate that ditch was? A. Between four and five feet from the bottom of the ditch to the top of the bank. Q. You were walking along, carrying a bale of hay? A. Yes, sir. Q. Was it up at the end of the ties? A. It was away from the ties. Q. Upon the dump, then? A. Yes, sir. Q. And there was loose hay there? A. Yes, sir. Q. And you say you slipped? A. Yes, sir; slipped off the bank on the loose hay. Q. And down into the ditch? A. Yes, sir; I believe it was four feet, sir, between four and five feet, sir, my belief is, from the bottom of the ditch to the top of the bank, sir. Q. Did you fall directly on this nail in your attempting to get out of the ditch? A. No, sir. I held there, for the nail went through my foot. Q. Did you land directly on the nail when you slipped? A. The weight of the bale of hay and myself took the nail directly through my foot, sir. Q. The timber you stepped on was a part of the wrecked car, did you say before? A. Yes, sir. Q. Was it a part of the car that burned? A. Yes, sir; and the wrecking crew didn't pick it up. Q. You saw them burn it, did you? A. Yes, sir."

At the conclusion of the evidence the defendant requested, with others, the following instructions, which were refused by the court and duly excepted to by defendant:

"(3) One of the duties which the law ordinarily imposes upon the master is to furnish the servant with a reasonably safe place in which to work. But you are instructed that this rule of law has its exceptions, and that such rule has no application in those cases where the servant is at the time employed or engaged in the work of making a dangerous place safe, or in the conduct of work under such condition that the condition of the place with regard to safety changes as the work progresses."

"(4) The degree of care which the defendant company was required to use in the conduct of its business

was what is known as ordinary care; that is, such a degree of care and diligence as the ordinarily prudent and careful man uses in and about the ordinary affairs of life."

"(5) You are instructed that, in carrying on the work where the condition of the place is constantly changing as the work goes on, the rule that the master must furnish to the servant a reasonably safe place in which to work has no application; and if you find from the evidence in this case that the work in which plaintiff was engaged at the time of the alleged injury was of such a character that the condition of the place where the plaintiff was required to work was constantly changing as the work or clearing up of the wreck progressed, then you are instructed that the plaintiff assumed the risk incident to such work, and the changing condition thereof, and in such event you will find for the defendant."

"(7) You are further instructed that, where the work in which the servant is employed consists in making a dangerous place safe, the rule that the master is bound to furnish the servant a safe place in which to work does not apply; and if you find from the evidence in this case that the plaintiff at the time of the injury complained of was engaged in the business of making a dangerous place safe, then you are instructed that he took and assumed the risk of all such injuries as were incident to such dangerous employment, and in case you so find you will return a verdict for the defendant."

"(9) If you find from the evidence that the direct and proximate cause of the injury complained of was the slipping of the plaintiff upon the hay, as testifi.ed to by the plaintiff, then you will find for the defendant. For accidental injuries, or such as occur without any act of negligence on the part of the defendant company, the company is not liable to the injured servant."

The court gave, among others, the following instructions, which were excepted to by defendant:

"(5) If you believe from the evidence that the plaintiff sustained the injury alleged in the petition while in the performance of his duty as an employee of the railroad company by stepping or falling upon the nail mentioned in said case, and that the stepping or falling upon the nail was the proximate cause of plaintiff's injury, and that he could not have observed the nail and board by ordinary diligence, and further that said board with the nail therein was placed at the said point by the negligence of the railroad company, and plaintiff was injured without fault of his, you should find for the plaintiff, in such amount as would compensate him for the injury received. If you do not so believe from the evidence, you should find for the defendant."

"(6) You are instructed that it was the duty of the defendant company to exercise such care towards the plaintiff in the work of clearing up the wreckage where the alleged injury occurred as a reasonably prudent man would in the exercise of his own business, under same or similar circumstances."

"(7) The negligence of a fellow servant is in law negligence of his principal. And if you find from the evidence in this case that Cooper Bray did tear the boards from the car, and throw the same where the plaintiff was required to pass in the course of his employment, and that such was negligence as above defined, then your verdict should be in favor of the plaintiff, unless you should believe from the evidence that the plaintiff himself was negligent."

"(8) The theory of the defense is that the injury sustained by plaintiff was while he was in discharge of his duty in helping to clear the wreckage hereinbefore mentioned, and that he assumed all the risks incident thereto, and the injury received by plaintiff would

not entitle him to recover, if he received any injury. And you are instructed in this connection that if the plaintiff was possessed of the same knowledge of the danger, and had the same means of knowing that the plank with the nail protruding therein was at the point where plaintiff fell or stepped upon it, and he received injury therefrom, then in that event the railroad company would not be liable, and you should so find.".

"(9) You are instructed that, in carrying on the work where the condition of the place is constantly changing as the work goes on, the rule that the master must furnish to the servant a reasonably safe place in which to work has no application; and if you find from the evidence in this case that the work in which plaintiff was engaged at the time of the alleged injury was of such character that the condition of the place where the plaintiff was required to work was constantly changing as the work of clearing up the wreckage progressed, then you are instructed that the plaintiff should exercise a greater degree of care and watchfulness in the progress of such work, and in the changing conditions thereof, as would be required of him in ordinary circumstances and ordinary conditions; and upon the other hand the defendant would be required to exercise a greater degree of care than it would under ordinary circumstances."

"(10) You are further instructed that if the plaintiff knew of the plank or board with the nail driven through same being placed at the point where he received the injury, or had a reasonable chance and opportunity of knowing the same was there, and did not move it, but in face of this fact proceeded or passed over it, and fell and received the injury, the defendant in this event would not be liable, and you should so find in your verdict."

"(11) In case you find for the plaintiff you will state in your verdict such sum as will compensate the plaintiff for the loss of time as resulted from said injury, if any, and for such physical pain and mental anguish that he suffered, if any, as a result of such injury."

The jury returned a verdict for the plaintiff, and upon the overruling of its motion for new trial, defendant brings error.

From the foregoing it is apparent that the trial court submitted this case to the jury upon the questions of contributory negligence and the assumption of risk on the part of the plaintiff, which, under our Constitution, must be left to the jury. But, as we view the case, the first and most important matter to be determined is the question of primary negligence on the part of the defendant. The mere fact that the plaintiff was injured is not enough, of itself, to create a liability against the defendant. In order to entitle a party to maintain an action for tort, there must be a violation of some duty, either of commission or omission on the part of the defendant, prejudicial to the rights of the plaintiff, and the burden is upon the complainant to establish such wrongful acts by a preponderance of the evidence; and the mere fact of the injury is not sufficient proof of the defendant's negligence. The question of the sufficiency of the evidence to establish primary negligence on the part of the defendant is not included within the terms of the Constitution, which provides that:

"The defense of contributory negligence and assumption of risk shall, in all cases whatsoever, be a question of fact, and at all times be left to the jury."

The question here presented is not the sufficiency of the evidence to establish the negligence of the defendant, but whether there was any evidence tending to prove negligence. The plaintiff testifies that he was an experienced employee of the defendant; that he was at the time engaged in clearing the track of a wrecked train, consisting of crushed and broken freight cars; that the track and

right of way were strewn and literally covered with the debris of demolished cars and freight; and that he received the injuries complained of while so employed.

Necessarily all trains were delayed, and the work was being done with all possible haste. Cars were being demolished and thrown from the track. The particular board containing the nail which caused the plaintiff's injury was thrown into a ditch from four to six feet deep, and the plaintiff testified that while walking along the embankment he slipped and fell into this ditch, and onto the nail, and was thereby injured. There was no other evidence tending to establish negligence on the part of the defendant.

The question now is: Was the defendant, under these circumstances, guilty of such negligence as would make it liable to the plaintiff for the injuries sustained? The rule laid down in *Essex County Elect. Co. v. Kelly,* 57 N. J. Law, 100, 29 Atl. 427, is as follows:

"The mere fact that the servant received injury does not establish, even *prima facie,* the negligence or breach of duty of the master."

In *Levins v. Bancroft,* 114 La. 105, 38 South. 72, it is said:

"The fact itself of the happening of an accident does not prove or even tend to prove negligence on the part of the servant."

In *Spring Valley Coal Co. v. Buzis,* 213 Ill. 341, 72 N. E. 1060, the Supreme Court of Illinois says:

"The mere fact that an employee has been injured is not sufficient to establish" negligence on the part of the employer, "and may have no tendency to show" such negligence, "but the manner of and circumstances under

which an injury was received may furnish proof of such negligence."

Bearing in mind the fact that the plaintiff herein was an employee of the defendant, we call attention to the language of Justice Brewer in *Patton v. Texas Pacific Ry. Co.,* 179 U. S. 663, 21 Sup. Ct. 275, 45 L. Ed. 361, wherein it is said:

"Upon these facts we make these observations: First. That while in the case of a passenger the fact of an accident carries with it a presumption of negligence on the part of the carrier, a presumption which in the absence of some explanation or proof to the contrary is sufficient to sustain a verdict against him, for there is *prima facie* a breach of his contract to carry safely *(Stokes v. Saltonstall,* 13 Pet. 181 [10 L. Ed. 115]; *Railroad Co. v. Pollard,* 22 Wall. 341 [22 L. Ed. 877]; *Gleeson v. Virginia Midland Railroad,* 140 U. S. 435, 443 [11 Sup. Ct. 859, 35 L. Ed. 458]), a different rule obtains as to an employee. The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employee to establish that the employer has been guilty of negligence."

The further citation of authorities is not necessary to support the well-established rule that negligence of the defendant will not be inferred from the mere fact that the injury occurred.

The only testimony tending to establish the negligence of the defendant is the fact that one of the other employees of the company threw the board containing the protruding nail into the ditch. This board was taken from one of the demolished cars, which was afterwards burned. The ditch was from four to six feet deep.

The rule applicable here is stated in *Mayne v. C., R. I. & P. Ry. Co.*, 12 Okla. 10, 69 Pac. 933, as follows:

"In order that an act of negligence shall be deemed the proximate cause of an injury, it must be such that a person of ordinary intelligence would have foreseen that the accident was liable to be produced thereby."

In *Okla. Gas & Elect. Co. v. Lukert*, 16 Okla. 397, 84 Pac. 1076, the court says:

"The true rule in determining what is proximate cause is that the injury must be the natural and probable consequence of the negligence."

Again, in *City Nat. Bank v. Crow*, 27 Okla. 107, 111 Pac. 210, Ann. Cas. 1912B, 647, it is said in substance:

"The test of whether an act was the remote or proximate cause of the injury complained of is whether the injury was one to be anticipated."

Taking these rules for our guidance, can it be said that, in throwing this board into the ditch under the circumstances, a person of ordinary intelligence would have foreseen that the injury was liable to be produced by the act? Or that such an injury could have been anticipated, or was the natural and probable consequence of the act? Must it be said by this court that it was the duty of the employees, while engaged in demolishing the wrecked cars and clearing the track, to stop and remove every protruding nail as they proceeded with the work? The question of due care and negligence is controlled very largely by the surroundings and circumstances of each particular case. The doctrine is clearly and forcibly stated by Ames, C., in *Sloan v. Warrenburg*, 36 Okla. 525, 129 Pac. 720, as follows:

"Whether or not a defendant is guilty of negligence depends upon the question whether he exercised reason-

able care under the circumstances existing at the time, not whether he had done everything which it was possible to do in the light of every possible danger that might arise. It may well be that after an accident has actually happened, in order to prevent its recurrence, an owner might exercise extraordinary care, and in so doing take precautions which would never have occurred to him but for the accident, and which are not usually observed in the business. A party's conduct must be judged by the circumstances, conditions, and duties existing at the time, and which are known to him, or in the exercise of reasonable care should be known to him."

Although discussing, in the main, the question of the assumption of the risk, the Circuit Court of Appeals of this Circuit, speaking through Justice Lochren, in *Florence & C. R. Co. v. Whipps,* 138 Fed. 13, 70 C. C. A. 443, makes use of language that is peculiarly applicable here, as follows:

"It is a general rule of law governing the relation of master and servant that it is the duty of the master to use ordinary care to furnish and maintain a reasonably safe place for the servant in which to perform his work. This rule as to 'safe place' only applies to such place as the master constructs, prepares, or selects for such purpose. It has a very limited application to the erection of new buildings or structures, though it may apply to stagings and the like supplied by the master, and does not render the master responsible for dangers which necessarily inhere in the work and are only to be guarded against by the care the servants themselves shall exercise in its performance. * * * So in the pulling down of structures, and in the removal of debris after some catastrophe or accident which has made the place unsafe and unfit for the use to which it has been devoted, and where the very object of the work is to clear away the wreckage and restore the place to a condition of safety and usefulness. If by such catastrophe a railroad used for the

transportation of passengers, freight, and mails is obstructed, the removal of the obstruction is a necessity admitting of no delay, whether the exigency arises in the daytime or at night, and servants employed, who undertake and engage in such work, necessarily assume the incidental risks. *Gulf, etc., Ry. v. Jackson*, 65 Fed. 48, 12 C. C. A. 507; *Minneapolis v. Lundin*, 58 Fed. 525, 7 C. C. A. 344; *Porter v. Silver Creek, etc., Coal Co.*, 84 Wis. 418, 423, 54 N. W. 1019; *Colo. Coal & Iron Co. v. Lamb*, 6 Colo. App. 255, 266, 40 Pac. 251; *Carlson v. Railway* [21 Or. 450] 28 Pac. 497."

The language used in *Carlson v. Oregon S. L. Ry. Co.*, 21 Or. 450, 28 Pac. 497, approves the same doctrine as to negligence of defendant, under like circumstances, adopted herein, in which the court says:

"Here the road of defendant was known to the deceased to be out of repair and in a dilapidated condition, so much so that the traffic thereon was entirely suspended, and the deceased was employed to assist in putting it in a reasonably safe condition for the passage of trains. In accepting such employment, and undertaking to perform the services required of him, he voluntarily and necessarily assumed, as part of his contract of employment, the risks incident thereto, among which was the dilapidated condition of the track. The rule that the master is bound to use reasonable care and skill to furnish his servants safe and suitable instruments and appliances to perform the services in which they are engaged only applies when such instrumentalities are placed in their hands for use. McKin. Fel. Serv. sec. 26; *Murphy v. Railroad Co.*, 88 N. Y. 146 [42 Am. Rep. 240]. It has no application to the safety and condition of the thing which the servant is employed to repair. Where a servant is employed to put a thing in a safe and suitable condition for use, it would be unreasonable and inconsistent to require the master to have it in safe condition and good repair for the purpose of such employment. The effect of such a rule would be to render the master

liable as an insurer of the safety of his servant, and entirely abrogate the well-settled doctrine that the servant assumes the risks and perils incident to his employment. Where a servant is employed to assist in repairing or opening a railroad, which is in a dilapidated condition and out of repair, the master does not owe to him the same duty to furnish a safe roadbed as to that portion of the road out of repair as it does to a servant engaged in the operation of trains upon the road in the ordinary course of business, or in riding upon the road in the course of his employment."

These authorities are cited simply for the purpose of showing the degree of care required of railroad companies under such conditions, and not upon the question of the assumption of the risk by the employee. After a careful consideration of the case, we are clearly of the opinion that no negligence is established, and there is no evidence whatever tending to prove negligence on the part of the defendant. By the wreckage of the train, the railroad, used as a public thoroughfare for the purpose of transmitting passengers, mails, and freight, was entirely obstructed, and the removal of the wreckage was a present, pressing necessity, admitting of no delay. Public necessity demanded all possible haste in putting the road into condition for use at the earliest possible moment. It would be carrying the doctrine of due care and safety too far to require such public carriers under these circumstances to guard against such an accident as is shown in this case.

Among the instructions requested by the defendant and refused by the court, was the following:

"For accidental injuries, or such as occur without any act of negligence on the part of the company, the company is not liable to the injured servant."

To our mind this instruction is a clear, plain statement of the law applicable to this case, and should have been given by the court. The question now presented is whether, admitting the truth of the plaintiff's evidence, together with such inferences and conclusions as can be reasonably drawn from it, there is any evidence to reasonably sustain a finding of negligence on the part of the defendant. That question we must answer in the negative.

We fully approve the doctrine laid down by Rosser, C., in *C., R. I. & P. Ry. Co. v. Watson,* 36 Okla. 1, 127 Pac. 693, wherein it is said:

"The question of the effect of evidence is always for the jury. The question of whether there is any evidence at all is for the court. It would seem that the statement of the facts of this case ought to be all that is necessary. If the company is responsible in this case, then the rule, so often announced, that the railroad company is not responsible for mere accidents, is not the law. Many people believe that they should be made insurers of the safety of their employees, but the writer of this opinion believes the legislative department of the state should make law, and believes that it is a usurpation for a court to change the law, whether the change is a needed one or not. To lay down a wrong rule against a corporation in one case will inevitably lead, sooner or later, to some private individual suffering from the application of it, or, what is much worse, an uncertain and fluctuating construction of the law, absolutely intolerable in a government by law. Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances, or doing what such a person would not have done. Anderson, Law Dict. Negligence must be shown by evidence. Proof of injury is not proof of negligence. The evidence, to justify a finding of negligence, must show a breach of duty on the part of the

defendant, such that a reasonable person should have foreseen would as a natural consequence cause an injury; not necessarily would probably cause an injury, in the sense of more likely to cause an injury than not, but the likelihood must be such that a reasonable person could foresee that injury would result in the ordinary course of things—that injury was one of the probable results and likely to happen. A mere possibility of the injury is not sufficient, where a reasonable man would not consider injury likely to result from the act as one of its ordinary and probable results."

As we look upon this case, the evidence totally fails to disclose any negligence on the part of the defendant; therefore the judgment of the trial court should be reversed, and the case remanded.

By the Court: It is so ordered.